## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| 225 BOWERY LLC,[1] | Case No. 23-10094 (BLS) |
| Debtor. | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (B) AUTHORIZING USE OF RESERVE ACCOUNT CASH, (C) SCHEDULING A FINAL HEARING, AND (D) GRANTING RELATED RELIEF**

225 Bowery LLC (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") respectfully submits this motion (the "Motion") for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Interim Order"), and for entry of a final order, pursuant to sections 105(a), 361, 362, 363, 364, 507 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the Debtor to use Cash Collateral (as defined below) subject to the terms and conditions set forth in the Interim Order, (ii) granting adequate protection to BHI (as defined below) in the form and manner provided for in the Interim Order, (iii) scheduling a final hearing (the "Final Hearing") to consider entry of an order granting the relief requesting in this motion on a final basis (the "Final Order") and (iv) granting

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number is 225 Bowery LLC (1333). The location of the Debtor's service address is: 187 Chrystie Street, New York, NY, 10002.

related relief. In support of this Motion, the Debtor relies upon the *Declaration of Nat Wasserstein, Chief Restructuring Officer of Debtor 225 Bowery LLC, in Support of Debtor's Petition and First Day Motions* (the "First Day Declaration"), filed on January 26, 2023 and incorporated herein by reference. In further support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Local Rule 9013-l(f), the Debtor consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue of this case and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a), 361, 362, 363 and 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rules 2002-1, 4001-2 and 9013-1.

## BACKGROUND

**A. General**

4.      On January 24, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case and no committee has been appointed. No trustee, examiner or official committee of unsecured creditors has been appointed in this Chapter 11 Case.

5.       Additional factual background regarding the Debtor, including its business operations, corporate and capital structures, and the events leading to the filing of this Chapter 11 Case, is set forth in the First Day Declaration.

**B.  Prepetition Capital Structure**

6.       As of the Petition Date, the Debtor's only secured lender with an interest in Cash Collateral (defined below) is Bank Hapoalim B.M. ("BHI"). The BHI loan agreement closed on or about March 4, 2019 and resulted in $68,000,000 of financing (the "BHI Loan").  The BHI Loan is governed by that certain Loan Agreement dated March 4, 2019 (the "Loan Agreement"), evidenced by a Consolidated, Amended and Restated Promissory Note for up to $80,000,000 (the "Note"), and secured by a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage" and together with the Loan Agreement, Note and other Financing Documents (as that term is defined in the Loan Agreement), the "BHI Loan Documents").

7.       Among other things, the BHI Loan Documents (and in particular, the Mortgage) granted BHI a lien on and first priority security interest in "Personalty," which is defined in the Mortgage to include, *inter alia*, the Hotel, Equipment, and Accounts (the "Prepetition Collateral," and the liens granting on the Prepetition Collateral, the "Prepetition Liens"). The Mortgage was recorded with the NYC Department of Finance Office of the City Register on March 4, 2019, contemporaneously with the closing of the BHI Loan Documents, and BHI filed a UCC-1 with the Delaware Secretary of State on March 14, 2019. BHI, as the Debtor's depository bank, has a

perfected security interest in all cash collateral on deposit in accounts maintained with BHI.  As of the Petition Date, approximately $79,498,046.36 is owed under the BHI Loan, including $67,093,333.36 in principal, $11,619,726.68 in interest, and $784,986.32 in late fees (the "BHI Prepetition Obligations").

8.      On or about April 28, 2022, BHI commenced a foreclosure action against the Debtor and certain affiliates in the Supreme Court of the State of New York, County of New York (Index No. 850096/2022) along with a motion to appoint a receiver shortly thereafter (the "Foreclosure Receivership Motion"). The Foreclosure Receivership Motion was consensually resolved through a stipulation dated May 27, 2022 [NYSCEF Doc. No. 39] (the "Stipulation") which limited the Debtor's authority to use cash.  Among other things, pursuant to the Stipulation, the Debtor was required to (i) deposit all of its funds into its checking account with BHI (ending in 135501) (the "Unrestricted Cash Account") and (ii) after paying certain approved expenses, transfer any balance remaining in the Unrestricted Cash Account above $650,000 to a separate Debtor account with BHI (the "Restricted Cash Account").

9.      The Debtor has reached agreement with BHI to permit the Debtor to use Cash Collateral (other than the funds in the Restricted Cash Account) during this Chapter 11 Case in accordance with the 13-week budget (the "Budget") attached to the Interim Order rather than in accordance with the Stipulation.

## THE DEBTOR'S IMMEDIATE NEED TO USE CASH COLLATERAL

10.     The Debtor seeks authority to use cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, "Cash Collateral") *on a consensual basis with BHI*, the only party with a properly perfected security interest in Cash Collateral.

11.     As set forth in the First Day Declaration, the Debtor needs access to Cash Collateral to, *inter alia*, pay expenses to continue to operate the Hotel in the ordinary course of business

during this Chapter 11 Case and to prosecute this Chapter 11 Case. The Debtor cannot operate without access to cash, and failure to obtain access now will cause immediate and irreparable harm to the Debtor, creditors and parties in interest. The Debtor requires immediate access to liquidity to ensure that it is able to continue operating during this Chapter 11 Case and preserve the value of its estate for the benefit of all parties in interest. The Debtor believes that the Budget and its projections provide an accurate reflection of its funding requirements over the identified period, will allow it to meet its obligations—including the administrative expenses of this Chapter 11 Case—and are reasonable and appropriate under the circumstances.

12.    The Debtor proposes to use Cash Collateral pursuant to the Budget attached to the Interim Order as **Exhibit 1**, subject to certain variances set forth therein.

13.    As adequate protection for their proposed use of Cash Collateral as set forth above, the Debtor proposes to provide the following to BHI:

    a.    replacement liens and superpriority administrative claims for any diminution in value of BHI's Prepetition Collateral;

    b.    payment of reasonable and necessary legal fees incurred by BHI  subject to standard notice to the Office of the United States Trustee and any committee appointed in the Chapter 11 Case; and

    c.    certain reporting obligations to BHI.

14.    In accordance with the disclosure requirements of Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(i), the Debtor submits the following concise statement of the material terms of the Interim Order.

| Summary of Material Terms | ¶ |
|---|---|
| **Entities with an Interest in Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(i)* | Bank Hapoalim B.M. | ¶¶ F, J |
| **Purposes for Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(ii)* | To avoid immediate and irreparable harm to its business, the Debtor requests access to Cash Collateral on an interim and final basis to fund the operation of their businesses in the ordinary course post-petition, as well as the administrative costs of this chapter 11 case. | ¶ K |
| **Budget** *Bankruptcy Rule 4001(b)(1)(B)(ii)* *Local Rule 4001-2(a)(i)(E)* | The 13-week Budget setting forth the Debtor's projected cash receipts and disbursements on a consolidated basis for the period commencing on the Petition Date, which is attached as <u>Exhibit 1</u> to the Interim Order.<br><br>The Debtor's use of Cash Collateral shall be limited to the items set forth in the Budget, subject to Permitted Variances. | ¶ 4 |
| **Duration of Use of Cash Collateral/ Termination Events/ Relief from Stay** *Bankruptcy Rule 4001(b)(1)(B)(iii), Local Rule 4001–2(a)(i)(M)* | The Debtor's right to use Cash Collateral pursuant to the Interim Order shall terminate (the date of any such termination, the "<u>Termination Date</u>") on the earlier to occur of any of the events set forth below (each such event, a "<u>Termination Event</u>"), subject in certain instances, to notice requirements:<br><br>1.   the failure of the Debtor to abide by the material terms, covenants, and conditions of the Interim Order or the Budget (subject to any permitted variances);<br><br>2.   the use of Cash Collateral for any purpose not authorized by the Interim Order;<br><br>3.   the dismissal of this Chapter 11 Case, the conversion of this chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or the appointment of a trustee or examiner with expanded powers; or<br><br>4.   an order of the Court is entered (other than the Final Order) reversing, staying, vacating, or otherwise modifying in any material respect the terms of the Interim Order.<br><br>The automatic stay provisions of section 362 of the Bankruptcy Code are proposed to be modified to permit the Debtor to implement and perform the terms of the Interim Order. | ¶ 7 |

| | | |
|---|---|---|
| **Proposed Adequate Protection**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br><br>*Local Rule 4001– 2(a)(i)(K)* | As proposed adequate protection for the interests of BHI in the Prepetition Collateral, solely to the extent of, and in an aggregate amount equal to, in each case, the Diminution in Value of such interests, the Debtor is proposing to offer the following to BHI:<br><br>1. Replacement Liens: Replacement liens (the "Adequate Protection Liens," and the property securing such liens, the "Replacement Collateral") on all of the Debtor's post-petition property which, but for the commencement of the chapter 11 case, would constitute Prepetition Collateral, subject and subordinate only to (i) the Carve-Out (as defined herein), (ii) any Prepetition Permitted Liens (as defined in the Interim Order) that exist on and are legal, valid, binding, enforceable, perfected, and non-avoidable as of the Petition Date and are permitted to be senior to the Prepetition Liens (as applicable) pursuant to BHI Loan Documents, and (iii) any Prepetition Permitted Liens in existence immediately prior to the Petition Date that are legal, valid, enforceable, binding, and non-avoidable and are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and which are permitted to be senior to the Prepetition Liens pursuant to applicable BHI Loan Documents, in each case not including the Prepetition Liens or the Adequate Protection Liens (such liens described in clauses (ii) and (iii), collectively, and not including any Prepetition Liens or Adequate Protection Liens, the "Senior Third Party Prepetition Permitted Liens");<br><br>2. Superpriority Claims: Pursuant to the Final Order and subject only to the Carve-Out, superpriority claims as provided for in section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims") payable from and having recourse to all prepetition and post-petition property of the Debtor and all proceeds thereof, including proceeds of Avoidance Actions (as defined herein) or property recovered under such Avoidance Actions whether by judgment, settlement, or otherwise;<br><br>3. Payment of reasonable and necessary legal fees of BHI; and<br><br>4. Certain reporting obligations to BHI. | ¶ 3 |

| Summary of Material Terms | | ¶ |
|---|---|---|
| **Carve-Out**<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)*<br><br>*Local Rule 4001-2(a)(i)(F)* | The Interim Order provides a "<u>Carve-Out</u>" of certain statutory fees and allowed professional fees of the Debtor and any statutory committee of unsecured creditors (a "<u>Committee</u>") appointed pursuant to section 1103 of the Bankruptcy Code which, upon the occurrence of a Carve-Out Event (as defined in the Interim Order), is subject to a Post-Carve-Out Notice Cap (as defined in the Interim Order) of $1,000,000, all as detailed in the Interim Order. The reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code are capped at $50,000. | ¶ 6 |
| **Stipulations and Challenge Period**<br><br>*Local Rule 4001-2(a)(i)(Q)* | Paragraph G of the Interim Order includes customary stipulations concerning the indebtedness owed to BHI and the liens and collateral securing such indebtedness.<br><br>Paragraph 8 of the Interim Order establishes a "Challenge Period" of not earlier than (x) in the case of any Committee, seventy-five (75) calendar days after the entry of this Interim order or sixty (60) calendar days after the appointment of such Committee, whichever is later and (y) for any other party in interest, seventy-five (75) calendar days after the entry of the Interim Order, to challenge the Debtor's stipulations. | ¶¶ G, 8 |

| | | |
|---|---|---|
| **Release of BHI**<br><br>*Local Rule 4001-2(a)(i)(Q))* | Upon entry of the Final Order, and in reach instance, subject to paragraph 8, in consideration of BHI permitting the Debtor to use Cash Collateral pursuant to the terms and conditions of this Interim Order, the Debtor will forever, unconditionally, permanently and irrevocably release, discharge, and acquit BHI and each of its successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, investment bankers, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past and present, and their respective heirs predecessors, successors and assigns (collectively, the "<u>Released Parties</u>") of any and all claims controversies, disputes, liabilities, obligations, demands, damages, expenses, debts, liens, actions and causes of action of any nature whatsoever, whether arising in law or otherwise, of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to the BHI Prepetition Obligations or the BHI Loan Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the BHI Prepetition Obligations, the BHI Loan Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the BHI Prepetition Obligations that the Debtor now has or may claim to have against the Released Parties, | ¶ 12 |

| Summary of Material Terms | ¶ |
|---|---|
| | arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order. | |
| **Waiver of 506(c) surcharge**<br><br>*Local Rule 4001-2(a)(i)(V)* | Upon entry of the Final Order, the Debtor will waive its rights under section 506(c) of the Bankruptcy Code. | ¶ 10 |
| **Waiver of "equities of the case" doctrine**<br><br>*Local Rule 4001-2(a)(i)(W)* | Upon entry of the Final Order, the Debtor will waive its rights to assert the "equities of the case" doctrine under section 552(b) of the Bankruptcy Code. | ¶ 9 |
| **Waiver of marshalling**<br><br>*Local Rule 4001-2(a)(i)(X)* | Upon entry of the Final Order, the Debtor will waive the equitable doctrine of "marshalling" and similar equitable relief. | ¶ 11 |

## **BASIS FOR RELIEF REQUESTED**

### A.  The Debtor's Use of Cash Collateral s Necessary

15.     A debtor's use of property of the estate, including cash collateral, is governed by section 363 of the Bankruptcy Code. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2).

16.     It is well-established that a bankruptcy court should, whenever possible, resolve issues in favor of allowing a debtor to continue its business as a going concern. Courts have recognized that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses . . . the congressional policy favoring rehabilitation over economic

failure would be frustrated." *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").

17.     Accordingly, courts regularly authorize the use of cash collateral to enhance or preserve the debtor's going concern value. *See, e.g.*, *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("[T]here is no question that the property would be improved by the proposed renovations and that an increase in value will result. In effect, a substitution occurs in that the money spent for improvements will be transferred into value. This value will serve as adequate protection for [the creditor's] secured claim.").

18.     It is essential to the Debtor's reorganization prospects and the preservation of going concern value that it has sufficient funds to operate in the ordinary course, and at a level that is on par or as close as possible to prepetition performance. Absent the use of Cash Collateral, the Debtor will not have sufficient working capital to: (a) make payments to vendors or suppliers, (b) satisfy operating costs, and (c) fund the administrative costs of this Chapter 11 Case. The ability to satisfy these expenses when due is essential to avoid immediate and irreparable harm to the Debtor's estate. In the normal course of business, the Debtor uses cash on hand and cash flow from operations and other sources to fund working capital and capital expenditures, and operate and maintain its business and property. Absent immediate access, the Debtor will not have adequate unencumbered cash on hand to pay these critical expenses.

**B.  The Proposed Adequate Protection is Reasonable and Appropriate**

19.     Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall

prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See* 11 U.S.C. § 362(d)(1); *see also In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).

20.    The Bankruptcy Code does not expressly define "adequate protection." Section 361 of the Bankruptcy Code, however, provides a non-exhaustive list of examples of adequate protection, including replacement liens and administrative priority claims. *See* 11 U.S.C. § 361. Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See, e.g.*, *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case."); *In re Realty Sw. Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992) ("'Adequate protection' is a question of fact because it has as its linchpin the concept of value, and therefore, is determined on a case-by-case basis.") (citation omitted); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted).

21.     In *Swedeland*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); *Beker Indus.*, 58 B.R. at 736 (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988). The Third Circuit has held that adequacy, "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the priming lien granted to the new lender. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re Am. Mariner Inds., Inc.*, 734 F.2d 426, 432 (9th Cir. 1984)).

22.     The Debtor proposes to grant the following adequate protection to BHI (the "Adequate Protection Obligations"), solely to the extent of the postpetition diminution in value of such party's interest in the Cash Collateral resulting from, among other things, the use, sale or lease by the Debtor of Cash Collateral and the imposition or enforcement of the automatic stay pursuant to section 362(a) of the Bankruptcy Code (collectively, "Diminution in Value"):

    a.   replacement liens and superpriority administrative claims for any diminution in value of the BHI's Prepetition Collateral;

    b.   payment of reasonable and necessary legal fees incurred by BHI; and

    c.   certain reporting obligations.

23.     The Debtor submits that the proposed adequate protection, as agreed to by BHI, will sufficiently protect BHI from any Diminution in Value of the Prepetition Collateral during the pendency of these proceedings.

**C.  The Scope of the Proposed Carve-Out Is Reasonable and Appropriate**

24.     The Adequate Protection Obligations are subject to the Carve-Out. Without it, the Debtor and other parties in interest may be deprived of certain rights and powers because the services for which such professionals may be paid in this chapter 11 case would be restricted. *See, e.g., In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). Additionally, the Carve-Out protects against administrative insolvency during the course of this chapter 11 case by ensuring that assets are made available for payment of the Clerk of the Court, U.S. Trustee fees, and professional fees of the Debtor and any committee.

**D.  Interim Relief Should Be Granted**

25.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the court is authorized to conduct an interim expedited hearing on the motion at which it may authorize a debtor to use cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. *See* FED. R. BANKR. P. 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

26.     Pending the Final Hearing, the Debtor requires immediate access to Cash Collateral to satisfy the day-to-day needs of the Debtor's business operations and to ensure access to professionals. Access to liquidity will address any concerns the Debtor's business partners may have regarding the Debtor's financial health and ability to continue operations in light of this chapter 11 case. The Debtor has an immediate need for liquidity to, among other things, maintain business relationships with its vendors and suppliers, and satisfy other essential working capital and operational needs, all of which are required to preserve and maintain the Debtor's going concern value for the benefit of all parties in interest. In addition, the Budget establishes that the Debtor's use of Cash Collateral will not prejudice BHI.

27.     Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 4001(b), the Debtor requests an expedited hearing to consider the Motion and entry of the Interim Order authorizing the Debtor's use of Cash Collateral.

**E.  Automatic Stay Should Be Modified on a Limited Basis**

28.     The relief requested herein contemplates a modification of the automatic stay to permit the Debtor to grant certain replacement liens to BHI and perform such acts as may be requested to assure perfection and priority of such liens. Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtor's business judgment, are reasonable and fair under the circumstances.

**<u>BANKRUPTCY RULE 4001(a)(3) SHOULD BE WAIVED</u>**

29.     The Debtor requests a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 4001(a)(3). As explained above and in the First Day Declaration, the use of

Cash Collateral is essential to prevent irreparable damage to the Debtor's operations. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## RESERVATION OF RIGHTS

30.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtor, other than as set forth in the Interim Order; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that, other than the liens and interests of BHI, any liens (contractual, common law, statutory, or otherwise) are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of any or all such other liens.

## WAIVER OF BANKRUPTCY RULE 6004(a) and 6004(h)

31.     As provided herein, and to implement the foregoing successfully, the Debtor requests that the Interim Order and the Final Order include a finding that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h), to the extent applicable.

## REQUEST FOR A FINAL HEARING

32.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that

the Court set a date which is no later than 25 days after the entry of the Interim Order, to hold a

hearing to consider entry of the Final Order and the permanent approval of the relief requested in

this motion. The Debtor also requests authority to serve a copy of the signed Interim Order, which

fixes the time and date for the filing of objections, if any, to entry of the Final Order, by first class

mail upon the notice parties listed below, and further request that the Court deem service thereof

sufficient notice of the hearing on the Final Order under Bankruptcy Rule 4001(c)(2).

## NOTICE

33.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee

for the District of Delaware; (b) the Debtor's twenty 20 largest unsecured creditors; (c) counsel to

the Debtor's secured lender, Bank Hapoalim B.M., Herbert Smith Freehills New York LLP, 450

Lexington Avenue, New York, New York 10017, Attn: Scott S. Balber, Esq.

(scott.balber@hsf.com); (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange

Commission; (f) the Banks; (g) counsel to Ace Bowery Group LLC and Ace Bowery International

LLC, Akerman LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Mark S.

Lichtenstein, Esq. (mark.lichtenstein@akerman.com); and (h) any such other party entitled to

notice pursuant to Rule 9013-1(m) of the Local Rules or that requests notice pursuant to

Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no

other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order and

Final Order granting the relief requested herein and provide such other relief as this Court deems

appropriate under the circumstances.

Dated:    January 27, 2023
          Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ryan M. Bartley*

Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
Joshua B. Brooks (No. 6765)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Emails:  mnestor@ycst.com
         mlunn@ycst.com
         rbartley@ycst.com
         jbrooks@ycst.com

- and -

ALSTON & BIRD LLP

Gerard S. Catalanello
James J. Vincequerra
Dylan S. Cassidy
Kimberly J. Schiffman
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
Emails:  gerard.catalanello@alston.com
         james.vincequerra@alston.com
         dylan.cassidy@alston.com
         kimberly.schiffman@alston.com

*Proposed Counsel to the Debtor and*
*Debtor in Possession*

## Exhibit A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| 225 BOWERY LLC,[2] | Case No. 23-10094 (BLS) |
| Debtor. | |

**INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION, (B) AUTHORIZING USE OF RESERVE
ACCOUNT CASH, (C) SCHEDULING A FINAL HEARING, AND
(D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[3] of the above-captioned debtor and debtor and debtor-in-possession (the "Debtor") for entry of this interim order (this "Interim Order") and a Final Order (as defined herein), pursuant to sections 105, 361, 362, 363, 364, 507, and 552 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things:

    (a)    authorization for the Debtor to use Cash Collateral (as defined herein), and any proceeds thereof;

    (b)    authorization to grant, as of the Petition Date (as defined below), the Adequate Protection Superpriority Claims and Adequate Protection Liens (each as defined

---

[2]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number is 225 Bowery LLC (1333). The location of the Debtor's service address is: 187 Chrystie Street, New York, NY, 10002.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

herein), to the extent of and as compensation for any Diminution in Value (as defined herein), and to perform all Adequate Protection Obligations (as defined herein);

(c)    modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(d)    the scheduling of a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion; and

(e)    waiver of any applicable stay and providing for the immediate effectiveness of this Interim Order.

and due and appropriate notice of the Motion and the interim hearing held before the Court (the "Interim Hearing") to consider entry of this Interim Order having been provided by the Debtor; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and upon the record made by the Debtor in the Motion, in the *Declaration of Nat Wasserstein in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), and at the Interim Hearing; and the relief requested in the Motion being reasonable, appropriate and in the best interests of the Debtor, its creditors, its estate and all other parties in interest in this Chapter 11 Case (as defined herein); and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

## THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]

A.       *Petition Date*. On January 24, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") with this Court.

B.       *Debtor in Possession*. The Debtor continues to operate its business and manage its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in this Chapter 11 Case.

C.       *Jurisdiction and Venue.* This Court has jurisdiction over the Chapter 11 Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Case and the proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the Motion and granted in this Interim Order are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and the Local Rules.

---

[4]    In accordance with Bankruptcy Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

D.    *Committee Formation*. As of the date hereof, no official committee of unsecured creditors (with any other statutory committee, a "Committee") has been appointed in the Chapter 11 Case.

E.    *Notice*. Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending a Final Hearing.

F.    *Prepetition Secured Indebtedness*. Without prejudice to the rights of any party, but subject to the limitations thereon in paragraph 8 of this Interim Order, the Debtor represents, admits, stipulates and agrees as follows (the "Debtor Stipulations"):

    i.    The BHI loan agreement closed on or about March 4, 2019 and resulted in $68,000,000 of financing (the "BHI Loan").  The BHI Loan is governed by that certain Loan Agreement dated March 4, 2019 (the "Loan Agreement"), is evidenced a Consolidated, Amended and Restated Promissory Note for up to $80,000,000 (the "Note"), and it is secured by a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage" and together with the Loan Agreement, Note and other Financing Documents (as that term is defined in the Loan Agreement), the "BHI Loan Documents").

    ii.    The BHI Loan Documents, including the Mortgage, granted BHI a lien on and first priority security interest in "Personalty," which is defined in the

Mortgage to include, inter alia, the Hotel, Equipment, and Accounts (the "Prepetition Collateral," and the liens granting on the Prepetition Collateral, the "Prepetition Liens"). The Mortgage was recorded with the NYC Department of Finance Office of the City Register on March 4, 2019, contemporaneously with the closing of the BHI Loan Documents, and BHI recorded a UCC-1 with the Delaware Secretary of State on March 14, 2019. As of the Petition Date, approximately $79,498,046.36 is owed under the BHI Loan, including $67,093,333.36 in principal, $11,619,726.68 in interest, and $784,986.32 in late fees (the "BHI Prepetition Obligations").

H.      *Necessity of Relief Requested*. Good cause has been shown for the entry of this Interim Order. The Debtor has an immediate need to use Cash Collateral to, among other things, fund the orderly continuation of its business, maintain the confidence of its customers and vendors, pay operating expenses, preserve going-concern value and pay the costs of administering the Chapter 11 Case, consistent with the Budget. In the absence of the availability of such liquidity in accordance with the terms hereof, the continued operation of the Debtor's business would not be possible, and serious and irreparable harm to the Debtor, its estate and creditors would occur. The terms for the Debtor's use of Cash Collateral pursuant to this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration. The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d). Absent granting the relief sought by this Interim Order, the Debtor's estate would be immediately and irreparably harmed. The use of Cash Collateral in accordance with this Interim Order is therefore in the best interest of the Debtor and its estate, creditors and other parties in interest.

I.       *Use of Cash Collateral*. All Cash Collateral (including all cash in the Unrestricted Cash Account), and all proceeds of the Prepetition Collateral, shall only be used for: (i) working capital; (ii) other general corporate purposes of the Debtor; (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Case, including, without limitation, payment of any prepetition obligations that are necessary to preserve the value of the Debtor's estate to the extent approved by the Court; and (iv) Adequate Protection Obligations, and for no other purpose, and shall only be used and/or applied in accordance with the terms and conditions of this Interim Order, including, without limitation, the Budget (subject to any Permitted Variance (as defined herein)), *provided*, *however*, that the Debtor shall not be entitled to use the Cash Collateral in the Restricted Cash Account as of the Petition Date or thereafter absent a further order of the Court or consent of BHI.

J.       *Adequate Protection for Prepetition Secured Parties*.  BHI is the only party entitled to adequate protection as and to the extent set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Based on the Motion, the First Day Declaration, and the evidence presented at the Interim Hearing, the proposed adequate protection and the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable and reflect a prudent exercise of the Debtor's business judgment.

K.       *Need for Immediate Entry of this Interim Order*. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use the Cash Collateral excluding the Cash Collateral in the Restricted Cash Account (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor. The Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among

other things, allow the Debtor to preserve and maintain the value of its assets and business and enhance the Debtor's prospects for a successful reorganization.

Based upon the foregoing findings and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ADJUDGED AND ORDERED** that:

1.      *Motion Granted*. The Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled.  This Interim Order shall become effective immediately upon its entry.

2.      *Authorization to Use Cash Collateral*. The Debtor is authorized to use Cash Collateral as set forth in this Interim Order commencing from the Petition Date through and including (but not beyond) any Termination Date (as defined herein), subject to the terms and conditions of this Interim Order and in accordance with the 13-week cash flow forecast of cash receipts and disbursements of the Debtor for the period commencing on the Petition Date, attached as **Exhibit 1** to this Interim Order (the "Initial Budget," and as such budget may be updated and/or modified from time to time by the Debtor as provided in Paragraph 4 hereto, the "Budget").

3.      *Adequate Protection for BHI*. BHI is entitled, pursuant to sections 361, 362, 363(c)(2) and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Cash Collateral, solely to the extent of the postpetition diminution in value of such party's interest in the Cash Collateral resulting from, among other things, the use, sale or lease by the Debtor of Cash Collateral and the imposition or enforcement of the automatic stay pursuant to section 362(a) of

the Bankruptcy Code (collectively, "Diminution in Value"). BHI shall receive the following (collectively, the "Adequate Protection Obligations"):

(a)    *Replacement Liens*. BHI is hereby granted, pursuant to sections 361 and 363(e) of the Bankruptcy Code, replacement security interests in and liens upon all of the Debtor's postpetition property (the "Adequate Protection Liens") which, but for the commencement of the Chapter 11 Case, would constitute Prepetition Collateral (the "Replacement Collateral"); *provided*, that the Adequate Protection Liens shall in each case be subject and subordinate only to (i) the Carve-Out (as defined herein), (ii) any Prepetition Permitted Liens (as defined herein) that exist on, and are legal, valid, binding, enforceable, perfected, and non-avoidable, as of the Petition Date and are permitted to be senior to the Prepetition Liens (as applicable) pursuant to applicable BHI Loan Documents or applicable law, and (iii) any Prepetition Permitted Liens in existence immediately prior to the Petition Date that are legal, valid, enforceable, binding and non-avoidable, and are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and which are permitted to be senior to the Prepetition Liens pursuant to applicable BHI Loan Documents, and in each case not including the Prepetition Liens or the Adequate Protection Liens (such liens described in clauses (ii) and (iii), collectively, and not including any Prepetition Liens or Adequate Protection Liens, the "Senior Third Party Prepetition Permitted Liens").

(b)    *Adequate Protection Superpriority Claims*. BHI is hereby granted, subject only to payment of the Carve-Out, an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof, including proceeds of Avoidance Actions or property recovered under such Avoidance Actions whether by judgment, settlement, or otherwise. Subject only to the Carve-

Out, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code. Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Case shall be senior to, or *pari passu* with, any of the Adequate Protection Superpriority Claims.

(c)       *Payment of BHI's Legal Fees and Costs.* As further adequate protection, the Debtor is authorized and directed to pay, without further Court order, the reasonable and documented fees and expenses (the "Adequate Protection Fees"), whether incurred before or after the Petition Date, of the following counsel to BHI: (i) Herbert Smith Freehills, lead counsel to BHI, and (ii) local counsel to BHI (collectively, "BHI Counsel"). BHI Counsel shall not be required to file applications or motions with, or obtain approval of, this Court for compensation and reimbursement of fees and expenses; *provided*, *however*, that any time BHI Counsel seek payment of fees and expenses from the Debtor, they shall provide summary copies of their fee and expense statements or invoices (which shall not be quired to contain time entries) to counsel to the Debtor, the U.S. Trustee and counsel to any Committee appointed in the Chapter 11 Case (collectively, the "Fee Notice Parties"). If no objection to payment of the requested Adequate Protection Fees is made in writing by any of the Fee Notice Parties within seven (7) calendar days after delivery of such invoices (the "Fee Objection Period"), then such invoice shall, to the extent funds are available in the Unrestricted Cash Account, be promptly paid, without further order of, or application to, this Court or notice to another party, and, in any case, within seven (7) calendar days following the expiration of the Fee Objection Period and shall not be subject to any further

review, challenge, or disgorgement.  If within the Fee Objection Period, a Fee Notice Party sends to the affected BHI Counsel a written objection to such invoice, then only the disputed portion of such Adequate Protection Fees shall not be paid as set forth above until the objection is resolved by the applicable parties or by order of this Court.

4.    *Budget; Reporting*.

(a)    No later than Friday of each fourth calendar week commencing on Friday February 24, 2023 at 3:00 p.m. (ET), the Debtor shall deliver to BHI and its counsel an updated Budget, which updated Budget shall be subject to the review and consent of BHI. The updated Budget will replace the previously delivered Budget only if such updated Budget is acceptable to BHI (provided that, BHI shall be deemed to have consented to the applicable updated Budget unless BHI objects thereto within five (5) business days after delivery thereof (which objection may be in e-mail to the Debtor and counsel to the Debtor).

(b)    No later than Friday at 3:00 p.m. (ET) of each calendar week commencing on February 10, 2023, the Friday following the first full week following the Petition Date, the Debtor shall deliver to BHI a variance report comparing, on a line item basis, actual results to the Budget for the previous individual week on a weekly, cumulative, and four-week trailing basis.

(c)    The Debtor shall test the Budget on February 24, 2023 at 3:00 p.m. (ET), the Friday following the first four (4) full weeks following the Petition Date on a four-week trailing basis (each such four-week period, the "Budget Period") and every second Friday thereafter. So long as no Termination Event has occurred with respect to Cash Collateral, the Debtor shall be authorized (i) to use Cash Collateral, including all amounts in the Unrestricted Cash Account but excluding amounts in the Restricted Cash Account as of the Petition Date, in each case in accordance with the Budget and this Interim Order in an amount that would not cause either (x)

actual cumulative disbursements to be more than twenty percent (20%) in excess of the disbursements included in the Budget for any Budget Period (in each case excluding fees and expenses of the professionals and advisors of the Debtor, any Committee and BHI), or (y) actual cumulative receipts (excluding asset sale proceeds other than ordinary course sales of inventory) to be more than twenty percent 20%) below the receipts (excluding asset sale proceeds other than ordinary course sales of inventory) included in the Budget for any Budget Period (each, a "Permitted Variance"), *provided*, *however*, that the Debtor may (A) carry-forward any disbursement amounts or receipt amounts that are available and unused during a Budget Period to the immediately following Budget Period and (B) may carry-backwards any amounts available to be used in one immediately subsequent Budget Period to be used in the then in effect Budget Period (which amounts will as a result not be available in such subsequent Budget Period).

5.     *Adequate Protection Lien Perfection.* This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, BHI may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Case. BHI may, in its sole discretion, file a photocopy of this Interim Order as a financing statement with any

recording officer designated to file financing statements or with any registry of deeds or similar

office in any jurisdiction in which the Debtor has real or personal property and, in such event, the

subject filing or recording officer shall be authorized to file or record such copy of this Interim

Order.

6.       *Carve-Out*. As used in this Interim Order, "Carve-Out" means the sum of: (i) all

fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a)

of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice

set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a

trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in

clause (iii) below); (iii) to the extent allowed by the Court at any time, whether by interim order,

procedural order, final order, or otherwise, all accrued and unpaid fees, costs, and expenses (the

"Allowed Professional Fees") incurred by persons or firms retained by the Debtor or any

Committee pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the

"Professionals") at any time before or on the date of delivery by the Agent of a Carve-Out Trigger

Notice (as defined herein),[5] whether allowed by the Court prior to or after delivery of a Carve-Out

Trigger Notice (the "Pre-Trigger Date Fees"); and (iv) after the date of the delivery of the Carve-

Out Trigger Notice (the "Trigger Date"), the payment of Professional Fees of Professionals in an

aggregate amount not to exceed $1,000,000 (the amount set forth in this clause (iv) being the "Post-

Carve-Out Trigger Notice Cap"). For purposes of the foregoing, "Carve-Out Trigger Notice" shall

mean a written notice to the Debtor, the U.S. Trustee and counsel for any Committee delivered by

BHI, which notice may only be delivered upon or following the occurrence of a Termination Date,

---

[5]      For purposes of this Interim Order, whenever notice is requested or required herein, such notice may be via
electronic mail, unless such other form of notice is specified.

in accordance with this Interim Order, stating that a Termination Date has occurred and the Post-Carve-Out Trigger Notice Cap has been invoked. Notwithstanding anything to the contrary in this Interim Order, the BHI Loan Documents or otherwise, the liens, security interests, and superpriority claims granted herein (including Adequate Protection Liens and Adequate Protection Superpriority Claims), the Prepetition Liens, and any other liens, claims or interests of any person, shall be subject and subordinate to the Carve-Out.

7.      *Termination Events.* The Debtor's right to use Cash Collateral, other than with respect to funding amounts within the Carve-Out, shall automatically terminate (the date of such termination, the "Termination Date"), without further notice or court proceeding, on the earliest to occur of any of the events set forth below (each such event, a "Termination Event"), in each case unless waived in writing by BHI:

(a)      failure of the Debtor to abide by the material terms, covenants, and conditions of this Interim Order or the Budget (subject to any Permitted Variances), which failure has not been cured within five (5) days of receipt of written notice by BHI;

(b)      the use of Cash Collateral for any purpose not authorized by this Interim Order;

(c)      the dismissal of this Chapter 11 Case, the conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the appointment in this Chapter 11 Case of a trustee or examiner with expanded powers, without the consent of BHI; or

(d)      an order of the Court is entered (other than the Final Order) reversing, staying, vacating, or otherwise modifying in any material respect the terms of this Interim Order.

8.      *Third Party Challenge Rights.* The stipulations, releases, agreements and admissions contained in this Interim Order, including the Debtor Stipulations, shall be binding on

the Debtor and shall be binding on each other party in interest, including any Committee and any subsequently appointed chapter 11 trustee, unless:

(a)     any such party in interest, with standing and requisite authority has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, *inter alia*, in this Paragraph 8) by no later than the earlier of (i) in the case of any Committee, seventy-five (75) calendar days after the entry of this Interim order or sixty (60) calendar days after the appointment of such Committee, whichever is later, and for any other party in interest, seventy-five (75) calendar days after the entry of this Interim Order, (ii) any other later date as has been agreed to, in writing (which agreement may be documented by e-mail), by BHI or (iii) any other date as set by an order of the Court for cause shown that is entered prior to the expiration of the Challenge Period, as then in effect (such time period established by the foregoing clauses (i) through (iii), the "Challenge Period") against BHI in connection with matters related to the BHI Loan Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral, including by (1) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the BHI Prepetition Obligations or Prepetition Liens, or (2) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims, or causes of action, objections, contests, or defenses with respect to the BHI Prepetition Obligations or Prepetition Liens or otherwise seeking affirmative relief (a "Challenge Proceeding") *provided*, *however,* that the timely filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court. If a

chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period shall be extended with respect to such trustee only, to the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected; and

(b)        there is a final, non-appealable order in favor of the plaintiff sustaining any Challenge Proceeding in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge Proceeding shall set forth with specificity the basis for such Challenge Proceeding, and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred. For the avoidance of doubt, a party in interest's commencement of a timely Challenge Proceeding shall preserve the Challenge Period only with respect to such party in interest commencing the Challenge Proceeding and only to the extent of the express content of such Challenge Proceeding. If no such Challenge Proceeding is timely commenced, then: (i) the Debtor's stipulations, admissions, agreements, and releases contained in this Interim Order, including, without limitation, the Debtor Stipulations, shall be binding on all parties in interest; (ii) any and all Challenge Proceedings by any party (including, without limitation, any Committee, any chapter 11 trustee, or any examiner and/or other estate representative appointed or elected in the Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released, and barred; (iii) to the extent not theretofore repaid, the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (iv) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition

Date, and to be, legal, valid, binding, perfected and of the priority specified in the Debtor Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (v) the BHI Prepetition Obligations and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtor, any Committee or any other party in interest, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for the Debtor with respect thereto). If any Challenge Proceeding is timely commenced, the Debtor Stipulations shall nonetheless remain binding and preclusive (as provided in this Section 5) on the Debtor, any Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, claims and defenses with respect to the BHI Prepetition Obligations or the Prepetition Liens on the Prepetition Collateral.

9.      *Section 552(b) Waiver.*  Subject to entry of the Final Order, BHI shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to BHI with respect to proceeds, product, offspring, rents, or profits of or any of the items enumerated in section 552(b)(2) of the Bankruptcy Code with respect to any of the Prepetition Collateral in any motion, case or action brought by the Debtor.

10.      *Waiver of 506(c) Claims.*  Subject to entry of the Final Order, (a) no costs or expenses of administration of the Chapter 11 Case or any Successor Case shall be charged against

or recovered from or against BHI pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of BHI and (b) no such consent shall be implied from any action, inaction or acquiescence of BHI (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

11.    *No Marshaling.* Subject to entry of the Final Order, BHI shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral and Cash Collateral, as applicable.

12.    *Releases.* Upon entry of the Final Order, and in reach instance, subject to paragraph 8, in consideration of BHI permitting the Debtor to use Cash Collateral pursuant to the terms and conditions of this Interim Order, the Debtor hereby forever, unconditionally, permanently and irrevocably releases, discharges, and acquits BHI and each of its successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, investment bankers, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past and present, and their respective heirs predecessors, successors and assigns (collectively, the "Released Parties") of any and all claims controversies, disputes, liabilities, obligations, demands, damages, expenses, debts, liens, actions and causes of action of any nature whatsoever, whether arising in law or otherwise, of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to the BHI Prepetition Obligations or the BHI Loan Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the

Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the BHI Prepetition Obligations, the BHI Loan Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the BHI Prepetition Obligations that the Debtor now has or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order.

13. *Miscellaneous*.

(a) *Binding Effect*. The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including, without limitation, BHI, the Debtor, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of any of the Debtor) and shall inure to the benefit of BHI and the Debtor and its successors or assigns.

(b) *Modification of Automatic Stay*. The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably

necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtor and BHI to accomplish the transactions contemplated by this Interim Order.

(c)     *Headings*. The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

(d)     *Effectiveness*. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

(e)     *No Third Party Rights*. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, third-party or incidental beneficiary.

(f)     *Survival of Interim Order*. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan of reorganization in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case, (iv) withdrawing of the reference of  the Chapter 11 Case from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in the Court.

(g)     *Controlling Effect of Interim Order*. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

(h)    *Order Immediately Effective.* Notwithstanding any otherwise applicable stay, including under Bankruptcy Rules 4001 and 6004, the terms and conditions of this Interim Order are effective immediately and enforceable upon its entry.

(i)    *Debtor Authorization to Effectuate Relief.* The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

(j)    *Exclusive Jurisdiction.* This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

(k)    *Reservation of Rights.* Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement or other compensation described with respect to the Carve-Out provisions.

14.    *Final Hearing.* The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023 at __:__ _.m., prevailing Eastern Time. The Debtor shall, on or before _____, 2023, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party that has filed prior to such date a request for notices with this Court, and to counsel for any Committee. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023, and shall be served on: (i) proposed counsel to the Debtor, (a) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Ryan M. Bartley, Esq. (rbartley@ycst.com) and Joshua B. Brooks, Esq.(jbrooks@ycst.com); and (b) Alston & Bird LLP, 90 Park Avenue, New York, NY 10016, Attn: Gerard S. Catalanello, Esq.

(gerard.catalanello@alston.com), James J. Vincequerra, Esq. (james.vincequerra@alston.com), Dylan S. Cassidy, Esq. (dylan.cassidy@alston.com), and Kimberly J. Schiffman, Esq. (kimberly.schiffman@alston.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn:  Joseph Cudia, Esq. (joseph.cudia@usdoj.gov); (iii) counsel to the Debtor's secured lender, Bank Hapoalim B.M., Herbert Smith Freehills New York LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Scott S. Balber, Esq.; (scott.balber@hsf.com); and (iv) counsel to any statutory committee appointed in the chapter 11 case.

## <u>EXHIBIT 1</u>

**Initial Budget**

**UNITLED at 3 Freeman Alley - 13 Week Cash Flow**

| 2023 | PREPETITION | JANUARY 1 | FEBRUARY 2 | 3 | 4 | 5 | MARCH 6 | 7 | 8 | 9 | APRIL 10 | 11 | 12 | 13 | TOTAL Weeks 1-13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 01/25-01/31 | 02/01-02/07 | 2/8-2/14 | 2/15-2/21 | 2/22-2/28 | 3/1-3/7 | 3/8-3/14 | 3/15-3/21 | 3/22-3/28 | 3/29-4/4 | 4/5-4/11 | 4/12-4/18 | 4/19-4/25 | 1/24-4/25 |
| **Operating Receipts** | | | | | | | | | | | | | | | |
| Room Revenue (Est.) | $100,750.00 | $151,200.00 | $151,200.00 | $151,200.00 | $151,200.00 | $151,200.00 | $317,750.00 | $317,750.00 | $317,750.00 | $317,750.00 | $369,600.00 | $369,600.00 | $369,600.00 | $369,600.00 | $3,354,200.00 |
| Sales + Hotel Tax Collection | Incl. in Rate | Incl. in Rate | Incl. in Rate | $16,632.00 | $16,632.00 | | $34,952.50 | $34,952.50 | $34,952.50 | $34,952.50 | $40,656.00 | $40,656.00 | $40,656.00 | $40,656.00 | $335,698.00 |
| Rental Income | $4,774.05 | $4,774.05 | | | | | $4,774.05 | | | | | | | | $14,322.15 |
| **Operating Receipts** | $100,750.00 | $155,974.05 | $151,200.00 | $167,832.00 | $167,832.00 | $357,476.55 | $352,702.50 | $352,702.50 | $352,702.50 | $415,030.05 | $410,256.00 | $410,256.00 | $410,256.00 | $410,256.00 | $3,704,220.15 |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| Room Expenses | ($343,389.08) | $0.00 | ($211,560.59) | ($34,750.00) | ($299,027.62) | ($87,442.00) | ($102,911.65) | ($85,590.00) | ($182,630.42) | ($114,090.00) | ($122,295.65) | ($104,974.00) | ($309,784.00) | ($133,474.00) | ($1,788,529.93) |
| Operational Expenses | ($65,605.21) | $0.00 | ($150,355.21) | ($11,750.00) | ($11,750.00) | ($21,750.00) | ($86,750.00) | ($19,250.00) | ($19,250.00) | ($29,250.00) | ($70,250.00) | ($19,250.00) | ($19,250.00) | ($29,250.00) | ($488,105.21) |
| Fixed Expenses | ($27,539.57) | $0.00 | ($71,383.57) | $0.00 | $0.00 | $0.00 | ($28,680.00) | $0.00 | $0.00 | $0.00 | ($28,680.00) | $0.00 | $0.00 | $0.00 | ($128,743.57) |
| Other Expenses | ($45,961.70) | $0.00 | ($49,800.41) | $0.00 | $0.00 | ($17,000.00) | ($30,000.00) | $0.00 | $0.00 | ($17,000.00) | ($80,000.00) | $0.00 | $0.00 | ($147,000.00) | ($490,800.41) |
| **Total Operating Disbursements** | ($482,495.56) | $0.00 | ($483,099.78) | ($46,500.00) | ($310,777.62) | ($126,192.00) | ($248,341.65) | ($254,840.00) | ($201,880.42) | ($160,340.00) | ($301,225.65) | ($124,224.00) | ($329,034.00) | ($309,724.00) | ($2,896,179.12) |
| **Operating Cash Flow** | ($482,495.56) | $100,750.00 | ($327,125.73) | $104,700.00 | ($142,945.62) | $41,640.00 | $109,134.90 | $97,862.50 | $150,822.08 | $192,362.50 | $113,804.40 | $286,032.00 | $81,222.00 | $100,532.00 | $808,041.03 |
| **Reorganization Expenses *** | | | | | | | | | | | | | | | |
| Debtors Legal | $0.00 | $0.00 | ($103,846.15) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($51,923.08) | ($675,000.00) |
| Committee Legal | $0.00 | $0.00 | ($23,076.92) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($150,000.00) |
| BHI Legal | $0.00 | $0.00 | ($23,076.92) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($11,538.46) | ($150,000.00) |
| CRO | $0.00 | $0.00 | ($9,230.77) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($4,615.38) | ($60,000.00) |
| UST | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Accountant | $0.00 | $0.00 | ($1,846.15) | ($923.08) | ($923.08) | ($923.08) | ($923.08) | ($923.08) | ($923.08) | ($923.08) | ($923.08) | ($923.08) | ($923.08) | ($923.08) | ($12,000.00) |
| **Total Reorganization Disbursements** | $0.00 | $0.00 | ($161,076.92) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($80,538.46) | ($1,047,000.00) |
| **NET CASH FLOW** | ($482,495.56) | $100,750.00 | ($488,202.65) | $24,161.54 | ($223,484.08) | ($38,898.46) | $28,596.44 | $17,324.04 | $70,283.62 | $111,824.04 | $33,265.94 | $205,493.54 | $683.54 | $19,993.54 | ($238,958.97) |
| **Cash Balance** | | | | | | | | | | | | | | | |
| Airbnb Released & Est. Funds pending Release | $517,807.60 | $141,022.00 | | | | | | | | | | | | | |
| Beginning Cash Balance | $272.78 | $618,830.38 | $271,649.73 | $295,811.27 | $72,327.18 | $33,428.72 | $62,025.16 | $79,349.20 | $149,632.82 | $261,456.86 | $294,722.79 | $500,216.33 | $500,899.87 | | $272.78 |
| Net Cash Flow | | $100,750.00 | ($488,202.65) | $24,161.54 | ($223,484.08) | ($38,898.46) | $28,596.44 | $17,324.04 | $70,283.62 | $111,824.04 | $33,265.94 | $205,493.54 | $683.54 | $19,993.54 | ($138,208.97) |
| **Ending Cash Balance** | | $618,830.38 | $271,649.73 | $295,811.27 | $72,327.18 | $33,428.72 | $62,025.16 | $79,349.20 | $149,632.82 | $261,456.86 | $294,722.79 | $500,216.33 | $500,899.87 | $520,893.41 | $520,893.41 |

*   Weekly amounts are for accrual purposes only and no amounts will be paid without Bankruptcy Court approval, other than BHI Legal which will be Paid by cash collateral.

**  Total Airbnb available funds including estimate earnings through end of Week 1 are approx. $2,119,579.70. **$1,360,000** is to be allocated to the **Suspense** account and the approx.balance of **$658,829** balance is to remain in the **Operating** account to fund operations.