**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| 225 BOWERY LLC,[1] | Case No. 23-10094 (TMH) |
| Debtor. | |

**CHAPTER 11 PLAN OF 225 BOWERY LLC PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE**

**ALSTON & BIRD LLP**
Gerard S. Catalanello (admitted *pro hac vice*)
James J. Vincequerra (admitted *pro hac vice*)
Stephen M. Blank (admitted *pro hac vice*)
Dylan S. Cassidy (admitted *pro hac vice*)
Kimberly J. Schiffman (admitted *pro hac vice*)
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Emails: Gerard.Catalanello@alston.com
         James.Vincequerra@alston.com
         Stephen.Blank@alston.com
         Dylan.Cassidy@alston.com
         Kimberly.Schiffman@alston.com

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
Andrew A. Mark (No. 6861)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Emails: mnestor@ycst.com
         mlunn@ycst.com
         rbartley@ycst.com
         amark@ycst.com

*Counsel to the Debtor and Debtor in Possession*

Dated: December 15, 2023

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is 225 Bowery LLC (1333).  The location of the Debtor's service address is: 187 Chrystie Street, New York, New York, 10002.

# TABLE OF CONTENTS

**Page**

Article I. DEFINED TERMS AND RULES OF INTERPRETATION ....................................... 1
    A.      Defined Terms ..................................................................................... 1
    B.      Rules of Interpretation ....................................................................... 18
    C.      Computation of Time ........................................................................ 19
    D.      Governing Law ................................................................................. 19
    E.      Reference to Monetary Figures.......................................................... 19
    F.      Reference to the Debtor or the Reorganized Debtor............................ 19
    G.      Controlling Document ...................................................................... 19

Article II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ........................... 20
    A.      Administrative Claims ...................................................................... 20
    B.      Professional Fee Claims.................................................................... 21
    C.      Priority Tax Claims........................................................................... 23
    D.      Statutory Fees................................................................................... 23

Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .......... 23
    A.      Classification of Claims and Interests................................................ 23
    B.      Summary of Classification................................................................. 23
    C.      Treatment of Claims and Interests .................................................... 25
    D.      Special Provision Governing Unimpaired Claims............................... 30
    E.      Voting Classes; Presumed Acceptance by Non-Voting Classes........... 30
    F.      Acceptance by Impaired Classes ...................................................... 31
    G.      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ... 31
    H.      Subordinated Claims ........................................................................ 31
    I.      Elimination of Vacant Classes .......................................................... 31
    J.      Controversy Concerning Impairment ................................................ 32

Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................. 32
    A.      General Settlement of Claims and Interests........................................ 32
    B.      Exemption from Certain Transfer Taxes and Recording Fees.............. 32
    C.      Retained Causes of Action and Dismissal of Litigation ...................... 33
    D.      Plan Implementation Transactions..................................................... 34
    E.      The Reorganization........................................................................... 34
    F.      The Asset Sale Wind-Down............................................................... 39
    G.      Closing the Chapter 11 Case.............................................................. 42

Article V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
               LEASES.......................................................................................... 43
    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 43
    B.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........ 44
    C.      Claims Based on Rejection of Executory Contracts and Unexpired Leases ........ 45

D. Modifications, Amendments, Supplements, Restatements, or Other
Agreements ............................................................................................ 46
E. Reservation of Rights .......................................................................... 46

Article VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................. 46
A. Timing and Calculation of Amounts to Be Distributed ...................... 46
B. Disbursing Agent ................................................................................ 47
C. Rights and Powers of Disbursing Agent ............................................ 47
D. Delivery of Distributions ................................................................... 47
E. Compliance with Tax Requirements/Allocations ............................... 48
F. No Postpetition or Default Interest on Claims ................................... 49
G. Allocation Between Principal and Interest ......................................... 49
H. Setoffs and Recoupment .................................................................... 49
I. Surrender of Canceled Instruments or Securities ............................... 49
J. Claims Paid or Payable by Third Parties ............................................ 50

Article VII. THE PLAN ADMINISTRATOR ....................................................... 50
A. The Plan Administrator ....................................................................... 50
B. Asset Sale Wind-Down ....................................................................... 52
C. Exculpation, Indemnification, Insurance and Liability Limitation ..... 53
D. Tax Returns ......................................................................................... 53
E. Dissolution of the Debtor .................................................................... 53

Article VIII. PROCEDURES FOR RESOLVING DISPUTED,  CONTINGENT, AND
UNLIQUIDATED CLAIMS and INTERESTS ................................. 53
A. Allowance of Claims and Interests ..................................................... 53
B. Claims and Interests Administration Responsibilities ........................ 54
C. Estimation of Claims ........................................................................... 54
D. Adjustment to Claims and Interests Without Objection ..................... 54
E. Time to File Objections to Claims ...................................................... 55
F. Disallowance of Claims ...................................................................... 55
G. Amendments to Proofs of Claim ........................................................ 55
H. No Distributions Pending Allowance ................................................. 55
I. Distributions After Allowance ............................................................ 55

Article IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ....... 56
A. Discharge of Claims and Termination of Interests and Controversies. ............... 56
B. Release of Liens .................................................................................. 56
C. Releases by the Debtor ....................................................................... 57
D. Releases by Holders of Claims and Interests ..................................... 58
E. Exculpation ......................................................................................... 59
F. Injunction ............................................................................................ 60
G. Protection Against Discriminatory Treatment .................................... 60
H. Term of Injunctions of Stays .............................................................. 61
I. Document Retention ............................................................................ 61

Article X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ................. 61

| | | |
|---|---|---|
| A. | Conditions Precedent to the Effective Date | 61 |
| B. | Waiver of Conditions | 62 |
| C. | Substantial Consummation | 63 |

**Article XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN** ..... 63

| | | |
|---|---|---|
| A. | Modification of Plan | 63 |
| B. | Effect of Confirmation on Modifications | 63 |
| C. | Revocation or Withdrawal of the Plan | 63 |

**Article XII. RETENTION OF JURISDICTION** ..... 63

**Article XIII. MISCELLANEOUS PROVISIONS** ..... 66

| | | |
|---|---|---|
| A. | Immediate Binding Effect | 66 |
| B. | Additional Documents | 66 |
| C. | Reservation of Rights | 67 |
| D. | Successors and Assigns | 67 |
| E. | Service of Documents | 67 |
| F. | Entire Agreement | 69 |
| G. | Exhibits | 69 |
| H. | Severability of Plan Provisions upon Confirmation | 69 |
| I. | Closing of Chapter 11 Case | 70 |
| J. | Conflicts | 70 |
| K. | Votes Solicited in Good Faith | 70 |
| L. | Waiver or Estoppel | 70 |
| M. | Further Assurances | 71 |

## CHAPTER 11 PLAN OF 225 BOWERY LLC
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

225 Bowery LLC, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), proposes this plan (the "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtor. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan.

Pursuant to section 1125(b) of the Bankruptcy Code, votes to accept or reject a chapter 11 plan cannot be solicited from holders of claims or interests entitled to vote on such plan until a disclosure statement has been approved by a bankruptcy court and distributed to such holders. On _____, 2023, the Bankruptcy Court entered the Disclosure Statement Order [D.I. ___], which, among other things, approved the Disclosure Statement, established procedures for voting on the Plan, and scheduled the Confirmation Hearing. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, businesses, results of operations, historical financial information, projections, future operations, and risk factors, as well as a summary and analysis of the Plan, and certain related matters, including distributions to be made under the Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

### Article I.

### DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.    "*Ace*" means Ace Group Bowery LLC and Ace Group International LLC, collectively.

2.    "*Ace Arbitration Award*" means that certain prepetition award by the International Court of Arbitration of the International Chamber of Commerce of $10,474,628.18, plus certain costs and expenses, in favor of Ace and against Debtor.

3.    "*Ace Complaint*" means that certain complaint filed by Ace in the action, captioned Bank Hapoalim, B.M. v. 225 Bowery LLC, et al., Index No. 850096/2022, in the Supreme Court of the State of New York for the County of New York, on November 22, 2022 asserting, among other claims, claims against the Prior Lender related to the SNDA (the "*SNDA Counterclaims*") and crossclaims against the Debtor and other defendants named therein (the "*SNDA Crossclaims*").

4.    "*Ace Judgment Lien*" means that certain judgment entered by the Supreme Court of the State of New York, County of New York on October 28, 2022 confirming the Ace Arbitration Award and giving rise to a judgment lien.

5.      "*Ace Preference Adversary Proceeding*" means that certain adversary proceeding captioned 225 Bowery LLC v. Ace Group International LLC and Ace Group Bowery LLC, Adv. No. 23-50011 (TMH), in which the Debtor seeks to avoid the Ace Judgement Lien.

6.      "*Ace Secured Claim*" means the Claim held by Ace on account of the Ace Arbitration Award as asserted by Ace in Proof of Claim No. 10 on the Claims Register.

7.      "*Ace Settlement*" means that certain settlement agreement entered into between the Debtor and Ace dated October 11, 2023, as described in the Disclosure Statement.  For the avoidance of doubt, the Secured Lender is not a party to the Ace Settlement.

8.      "*Actions Outside of Debtor's Control*" means conduct or action by any Person or Entity (other than the Debtor or its Affiliates) that creates delay in the occurrence of the Effective Date so that the Effective Date occurs after February 29, 2024, including without limitation, any objections or challenges to confirmation of the Plan and the Court's availability to conduct the Confirmation Hearing or enter the Confirmation Order.

9.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Case arising on or prior to the Effective Date and allowed pursuant to section 503(b) of the Bankruptcy Code and entitled to priority pursuant to 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the estate and operating the Debtor's business incurred on or after the Petition Date until and including the Effective Date; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

10.     "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days after the Effective Date; *provided*, *however*, that, for the avoidance of doubt, the bar date for Administrative Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code is the date established in the Bar Date Order.

11.     "*Administrative Claims Objection Deadline*" means the date that is one hundred and fifty (150) days after the Administrative Claims Bar Date.

12.     "*Affiliate*" means an affiliate as such term is defined in section 101(2) of the Bankruptcy Code.

13.     "*Allowed*" means, with respect to any Claim or Interest, all or that portion, as applicable, of any Claim against or Interest in the Debtor that (a) has been listed in the Schedules (as such Schedules may be amended by the Debtor from time to time) as liquidated in amount and not disputed or contingent, and for which no contrary or superseding Proof of Claim has been timely Filed, (b) has been expressly allowed by Final Order or under the Plan, (c) has been compromised, settled or otherwise resolved pursuant to the terms of the Plan, the Bankruptcy Rules, the Local Rules, or another Final Order of the Bankruptcy Court, or (d) is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, the Bar Date Order, or another Final Order of the Bankruptcy Court a Proof of Claim is not and shall not be required to be Filed) that the Debtor or any other party in interest do not timely object to in accordance with the terms of the Plan; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered "Allowed" for any

2

other purpose under the Plan or otherwise, except if and to the extent otherwise determined to be Allowed as provided herein.  Unless otherwise specified under the Plan, under the Bankruptcy Code, by order of the Bankruptcy Court or as otherwise agreed by the Debtor, Allowed Claims shall not, for any purpose under the Plan, include any interest, costs, fees, or charges on such Claims from and after the Petition Date, and no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt, (i) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim, and (ii) a Disputed Claim shall not become an Allowed Claim unless as otherwise provide for in the Plan.  "*Allow*" and "*Allowing*" shall have correlative meanings.

14.     "***Amended and Restated CBA***" means an amended and restated collective bargaining agreement in form and substance acceptable to the Debtor and the Union, and which shall (i) set forth the treatment of the Union Obligations arising prior to the Effective Date as part of the cure required under section 365 of the Bankruptcy Code, and (ii) be assumed by the Reorganized Debtor under and pursuant to the Plan in the event the Debtor consummates a Reorganization.

15.     "***Amended and Restated Loan Documents***" means the Loan Documents as each may be amended and restated in a form acceptable to Debtor and Secured Lender, and each of which is substantially in the form included in the Plan Supplement.

16.     "***Amended Cash Collateral Order***" means the *Order Supplementing Existing Cash Collateral Orders and Granting Secured Lender Additional Adequate Protection* [D.I. 332], entered by the Bankruptcy Court on November 2, 2023.

17.     "***Amended Debtor Organizational Documents***" means, in an Asset Sale Wind-Down, the organizational documents of Debtor: (i) as amended as necessary to provide that the Plan Administrator may (a) wind down the Debtor's business and affairs as expeditiously as possible, (b) resolve Disputed Claims, (c) make distributions on account of Allowed Claims as provided hereunder, (d) enforce and prosecute claims, interests, rights, privileges and the Retained Causes of Action in an efficient manner, (e) file appropriate tax returns, (f) comply with the Debtor's continuing obligations under the Asset Purchase Agreement, if any, (g) liquidate the Wind-Down Assets and distribute the proceeds thereof as set forth herein, (h) administer the Plan; and (i) carry out any and all other purposes as set forth in the Amended Debtor Organizational Documents; and (ii) substantially in the form included in the Plan Supplement.

18.     "***Asset Purchase Agreement***" means the asset purchase agreement pursuant to which the Asset Sale is consummated to either the Purchaser or Secured Lender, as more particularly set forth in the Asset Sale Notice.

19.     "***Asset Sale***" means the sale of substantially all of the Debtor's assets under the Plan and either consummated, at Debtor's option, (i) to the Purchaser in accordance with an Asset Purchase Agreement, or (ii) to the Secured Lender *via* Credit Bid in accordance with an Asset Purchase Agreement, *provided* that such Credit Bid and related Asset Purchase Agreement shall

be in form and substance acceptable to the Secured Lender in its sole and absolute discretion, all as more particularly set forth in the Asset Sale Notice.

20. "*Asset Sale Notice*" means that certain notice evidencing the Debtor's election to proceed with the Asset Sale and estimated percentage recoveries thereunder, filed by the Debtor with the Bankruptcy Court not later than the Election Notice Deadline.

21. "*Asset Sale Proceeds*" means any Cash or non-Cash proceeds of the Asset Sale (including, if the Credit Bid is consummated, the reduction in the Allowed Secured Lender Claim that is part of the Credit Bid).

22. "*Asset Sale Wind-Down*" means consummation of the Asset Sale and implementation of the Plan in accordance with Article IV.F. hereof.

23. "*Assets*" means all or substantially all of the Debtor's rights, title, and interests of a Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

24. "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtor or their Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

25. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time, as applicable to the Chapter 11 Case.

26. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of any withdrawal of the reference under section 157(d) of the Judicial Code, the United States District Court for the District of Delaware.

27. "*Bankruptcy Rules*" means, collectively, (i) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Case, (ii) the Local Rules, and (iii) the general and chambers rules of the Bankruptcy Court.

28. "*Bar Date Order*" means the *Notice of Deadline for Filing of Proof of Claims* [D.I. 115] filed by the Debtor on March 15, 2023 in connection with the *Order (I) Establishing Deadlines for Filing Proofs of Claim and (II) Approving the Form, Timing, and Manner of Notice Thereof* [D.I. 85] entered by the Bankruptcy Court on February 21, 2023.

29. "*Bidding Procedures*" means the bidding procedures attached as Exhibit 1 to the Bidding Procedures Order, as modified by bidding procedures attached as Exhibit A to the *Notice of Revised Bidding Procedures* [D.I. 344] filed by the Debtor.

4

30. "***Bidding Procedures Documents***" means the Bidding Procedures, the Bidding Procedures Motion, and the Bidding Procedures Order.

31. "***Bidding Procedures Motion***" means the *Debtor's Motion for Entry of Orders (I)(A) Approving Certain Bidding Procedures for the Marketing and Sale of the Debtor's Assets, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (C) Establishing Certain Assumption and Assignment Procedures, (D) Approving the Form and Manner of Notice of the Foregoing, and (E) Granting Related Relief; And (II)(A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of the Assigned Contracts, and (C) Granting Related Relief* [D.I. 228] filed by the Debtor on July 21, 2023.

32. "***Bidding Procedures Order***" means the *Order (I) Approving Certain Bidding Procedures, (II) Scheduling an Auction and a Hearing on the Approval of the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens Claims, Interests, and Encumbrances, (III) Establishing Certain Assumption and Assignment Procedures, (IV) Approving the Form and Manner of Notice of the Foregoing, and (v) Granting Related Relief* [D.I. 279] entered by the Bankruptcy Court on August 28, 2023.

33. "***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

34. "***Cash***" or "***$***" means the legal tender of the United States of America or the equivalent thereof.

35. "***Cash Collateral Order***" means (a) the *Interim Order (A) Authorizing Use of Cash Collateral and Granting Adequate Protection, (B) Authorizing Use of Reserve Cash, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [D.I. 46], entered by the Bankruptcy Court on January 31, 2023, (b) the *Final Order (A) Authorizing Use of Cash Collateral and Granting Adequate Protection, (B) Authorizing Use of Reserve Cash, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [D.I. 113], entered by the Bankruptcy Court on March 14, 2023, and (c) the Amended Cash Collateral Order, as may be further amended from time to time.

36. "***Causes of Action***" means, without limitation, any actions, Claims, interests, controversies, causes of action, crossclaims, counterclaims, third-party claims, recoupments, demands, rights, actions, suits, rights of setoff, claims for breach of duty imposed by law or in equity, damages, remedies, obligations, liabilities, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, judgments, accounts, debts, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. For the avoidance of doubt, "Causes of Action" includes, without limitation: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Actions; (d) such claims and defenses as fraud, mistake, duress,

5

and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

37.    "*Chapter 11 Case*" means the case for the Debtor filed under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and styled *In re 225 Bowery, LLC*, Case No. 23-10094 (TMH).

38.    "*Claim*" means any "claim" (as such term is defined in section 101(5) of the Bankruptcy Code) asserted against the Debtor.

39.    "*Claims Bar Date*" means, as applicable, the date by which a Proof of Claim must be or must have been Filed, as established by (a) the Bar Date Order, (b) any other Final Order of the Bankruptcy Code, as applicable, or (c) the Plan.

40.    "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against the Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date; *provided*, that the Debtor or the Reorganized Debtor, as applicable, may seek a further extension of such date, and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims or Interests.

41.    "*Claims Register*" means the official register of Claims maintained by the clerk in the Chapter 11 Case.

42.    "*Class*" means a category of Claims or Interests as set forth in Article III of the Plan pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

43.    "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Case.

44.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

45.    "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

46.    "*Confirmation Objection Deadline*" means the deadline set forth in the Disclosure Statement Order by which parties in interest may file objections to Confirmation of the Plan.

47.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the transactions contemplated thereby.

48.    "*Consummation*" means the occurrence of the Effective Date.

6

49.     "***Credit Bid***" means a bid submitted by the Secured Lender pursuant to section 363(k) of the Bankruptcy Code for the purchase of the Assets set forth in an applicable Asset Purchase Agreement.

50.     "***Cure Claim***" means all amounts required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) and other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

51.     "***October Cure Notice***" means the *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [Docket No. 304] filed on October 2, 2023.

52.     "***Debtor***" means as defined in the preamble.

53.     "***Disallowed***" means, with respect to any Claim or Interest or portion of a Claim or Interest, any Claim against the Debtor that (a) has been disallowed by a Final Order of the Bankruptcy Court, (b) has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as $0.00, contingent, disputed, or unliquidated and as to which no Proof of Claim has been Filed by the applicable Claims Bar Date or deemed timely Filed pursuant to any Final Order of the Bankruptcy Court, (c) has been agreed to by the Holder of such Claim and the Debtor to be equal to $0.00 or to be expunged, (d) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in the Filed amount of any Proof of Claim, or (e) has not been listed by the Debtor on the Schedules and as to which no Proof of Claim has been Filed by the applicable Claims Bar Date or deemed timely or properly Filed pursuant to any Final Order of the Bankruptcy Court.  In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

54.     "***Disbursing Agent***" means (i), in a Reorganization, the Reorganized Debtor, or any Entity or Entities chosen by the Reorganized Debtor, or (ii), in an Asset Sale Wind-Down, the Debtor or any Entity or Entities chosen by the Debtor, and in the case of either of the foregoing (i) or (ii), to make or to facilitate distributions contemplated by the Plan.

55.      "***Disclosure Statement***" means the disclosure statement for the Plan, including all exhibits and schedules thereto and references therein (as amended, supplemented, or modified from time to time), that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

56.     "***Disclosure Statement Order***" means the order of the Bankruptcy Court approving the Disclosure Statement.

57.     "***Disputed***" means, with respect to any Claim or Interest, (a) any Claim or Interest, proof of which was timely and properly Filed, which is disputed under the terms of the Plan or as

to which the Debtor has interposed and not withdrawn an objection or request for estimation (pursuant to the terms of the Plan or otherwise) that has not been determined by a Final Order or (b) any Claim or Interest that is otherwise disputed by the Debtor, the Reorganized Debtor, or any other party in interest, which dispute has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court.

58.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Confirmation Date.

59.    "*Effective Date*" means (a) the first Business Day after the Confirmation Date on which: (i) all conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article X.A and Article X.B of the Plan, and (ii) no stay of the Confirmation Order is in effect, or (b) such other date as may be agreed to by the Debtor.

60.    "*Election Notice Deadline*" means the date established pursuant to the Disclosure Statement Order as the date by which the Debtor must elect for the Asset Sale Wind Down by filing the Asset Sale Notice or the Reorganization by filing the Reorganization Notice.

61.    "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

62.    "*Estate*" means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code

63.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such, each of: (a) the Debtor; (b) the Debtor's Professionals; (c) Nat Wasserstein as Chief Restructuring Officer of the Debtor, Lindenwood Associates, LLC and any person or entity serving as an officer, director or manager of the Debtor after the Petition Date, solely in such capacity; *provided* that, notwithstanding anything to the contrary herein, none of the Paz Parties or Northwind Parties shall be an Exculpated Party.

64.    "*Executory Contract*" means a contract or lease to which the Debtor is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

65.    "*Existing Equity Holder*" means 225 Bowery Group LLC, a New York limited liability company and sole member of the Debtor.

66.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court, the clerk of the Bankruptcy Court, or any of its or their authorized designees in the Chapter 11 Case.

67.    "*Final Order*" means an order, ruling, or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Chapter 11 Case (or the docket of such other court), which has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, stay, reargument, or rehearing shall be

pending, or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; *provided*, that no order shall fail to be a Final Order solely due to the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or Rule 9024 of the Bankruptcy Rules may be filed with respect to such order.

68.      "*General Unsecured Claim*" means any Unsecured Claim against the Debtor that is not (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) an Other Secured Claim; (e) a Secured Lender Claim; (f) an Ace Secured Claim; (g) a Mechanic's Lien Bond Claim; (h) a Mechanic's Lien Claim; or (i) a Union Claim.  For the avoidance of doubt, "General Unsecured Claim" shall include any Insider General Unsecured Claim.

69.      "*Governmental Unit*" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

70.      "*Guarantees*" means (a) that certain Recourse Guaranty dated as of March 4, 2019, (b) that certain Limited Payment Guaranty dated as of March 4, 2019 and (c) that certain Environmental Indemnification Agreement dated as of March 4, 2019, in each case made by the Guarantors in favor of the Prior Lender.

71.      "*Guarantors*" means David Paz and Omnia Properties LLC, a New York limited liability company.

72.      "*GUC Reorganization Payments*" means, if the Debtor consummates the Reorganization, Cash payments equal to the lesser of (a) $825,000, or (b) an amount sufficient to provide a twenty percent (20%) recovery on account of each Allowed General Unsecured Claim, as described in Article III.C.8. of the Plan.

73.      "*GUC Wind-Down Pool*" means, if the Debtor consummates an Asset Sale and implements the Plan through the Asset Sale Wind-Down, the Asset Sale Proceeds after satisfaction of all Claims against the Debtor that are either (i) Secured, (ii) entitled to priority under the Bankruptcy Code, or (iii) otherwise entitled, pursuant to the Bankruptcy Code, to payment before satisfaction of, or distribution on account of, any Unsecured Claim, *provided* that, in the context of an Asset Sale to the Secured Lender *via* a Credit Bid, such amount shall be $0.00.

74.      "*Holder*" means an Entity holding a Claim or Interest.

75.      "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

76.      "*Indemnification Provisions*" means the Debtor's indemnification provisions currently in place as of the Petition Date, whether in the Debtor's by-laws, certificates of incorporation or formation, other formation documents, board resolutions, or in the contracts of

the current and former directors, members, officers, managers, employees, attorneys, other professionals, and agents of the Debtor.

77.    "***Initial Owners***" means KAL Realty LLC, VNAA LLC and TLLULE LLC.

78.    "***Insider***" means an "insider" as such term is defined in section 101(31) of the Bankruptcy Code.

79.    "***Insider General Unsecured Claims***" means the Claims held by any Paz Party (including as asserted in Proof of Claim Nos. 11 and 13 on the Claims Register) and any Northwind Party, which remain subject to potential subordination pursuant to section 510(b) of the Bankruptcy Code.

80.    "***Interest***" means any equity security (as such term is defined in section 101(16) of the Bankruptcy Code) of the Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership or profits interests of the Debtor, in each case issued pursuant, and in connection with, Debtor's corporate governance documents, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in the Debtor, whether or not arising under or in connection with any employment agreement, and whether or not certificated, transferable, preferred, common, voting, or denominated "stock," or similar security, that existed immediately before the Effective Date.

81.    "***Interim Compensation Order***" means the *Order Approving Motion Regarding Interim Compensation Procedures* [D.I. 103], entered by the Bankruptcy Court on March 13, 2023.

82.    "***Judicial Code***" means title 28 of the United States Code, 28 U.S.C. §§ 1–5001.

83.    "***Lien***" means a lien as such term is defined in section 101(37) of the Bankruptcy Code.

84.    "***Loan Agreement***" means that certain Loan Agreement between the Debtor and Prior Lender dated March 4, 2019.

85.    "***Loan Documents***" means the Loan Agreement and all of the documents evidencing, governing, and securing the Loan Agreement, including that certain Consolidated, Amended and Restated Promissory Note for up to $80,000,000, that certain Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement, the Guarantees, and other financing documents.

86.    "***Local Rules***" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as may be amended from time to time.

87.    "***Management Agreement***" means the Hotel Management Agreement entered into between Initial Owners and Ace Group Bowery LLC on or about July 22, 2014, in which the Initial Owners assigned their rights and obligations under the Management Agreement to Subsequent Owners on or about February 4, 2017, and in which the Subsequent Owners assigned their rights and obligations under the Management Agreement to the Debtor on or about March 4, 2019.

88.    "***Mechanic's Lien Bonds***" means (a) the bond dated June 7, 2018 and numbered K13541243 for the benefit of New York Steel Erectors Inc. with the Prior Owners as the obligors (b) the bond dated February 1, 2019 and numbered K15301624 for the benefit of Open Architectural Products LLC d/b/a Open AWD with the Prior Owners as the obligors and (c) the bond dated June 27, 2019 and numbered K15302495 for the benefit of Culinary Depot Inc. and with the Debtor as obligor, in each case issued by issued by Westchester Fire Insurance Company.

89.    "***Mechanic's Lien Bond Claims***" means those Claims of Westchester Fire Insurance Company asserted in Proof of Claim No. 19 on the Claim Register and/or in connection with the Mechanic's Lien Bonds.

90.    "***Mechanic's Lien Claims***" means those Claims of (a) New York Steel Erectors, Inc. as asserted in Proof of Claim No. 5 on the Claims Register, (b) Open Architectural Products LLC d/b/a Open AWD, as asserted in proof of Claim No. 1 on the Claims Register and (c) Culinary Depot, Inc., scheduled in Schedule E/F, Part 2, Section 3.5 [D.I. 156].

91.    "***Northwind Parties***" (and each a "***Northwind Party***") means, collectively, Ran Eliasaf, Northwind RE LLP, Northwind RE GP, LLC, Northwind RE Holdings, LLC, 225 Bowery NW PE LLC, 225 Bowery Holdings LLC, 225 Bowery Holdings II LLC, 225 Bowery Pref Equity LLC, and each of their respective Affiliates; *provided* that neither the Debtor nor Existing Equity Holder is a Northwind Party.  For the avoidance of doubt, Secured Lender is not a Northwind Party under this Plan.

92.    "***Operating Budget***" means the budget which will be included in the Amended and Restated Loan Documents pursuant to which the Reorganized Debtor will operate in a Reorganization until the Secured Lender Claim has been satisfied in accordance with the Amended and Restated Loan Documents.

93.    "***Other Priority Claim***" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

94.    "***Other Secured Claim***" means any Secured Claim other than an Administrative Claim and Secured Lender Claim. For the avoidance of doubt, "Other Secured Claim" shall exclude the Ace Secured Claim and include the Secured Tax Claim.

95.    "***Paz Parties***" (and each a "***Paz Party***") means, collectively, David S. Paz, Omnia Properties, LLC, and each of their respective Affiliates; *provided* that neither the Debtor nor the Existing Equity Holder is a Paz Party.

96.    "***Person***" has the meaning set forth in section 101(41) of the Bankruptcy Code.

97.     "***Petition Date***" means January 24, 2023.

98.     "***Plan***" means this *Chapter 11 Plan of 225 Bowery LLC Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits, supplements, appendices, and schedules, as each may be altered, amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Plan, including the Plan Supplement (as amended, supplemented or modified from time to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

99.     "***Plan Administrator***" means (i) in the case of a Reorganization, the Sole Manager, and (ii) in the case of an Asset Sale Wind-Down, Nat Wasserstein, on behalf of the Debtor, and, in each case of the forgoing (i) and (ii), the Plan Administrator will administer the Plan in accordance with the terms of the Plan.

100.    "***Plan Implementation Transactions***" means the Reorganization, Asset Sale Wind-Down and other transactions designed to implement the Plan as described in Article IV of the Plan.

101.    "***Plan Supplement***" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be Filed by the Debtor no later than seven (7) days before the Voting Deadline (except for the Reorganization Notice, Asset Sale Notice, Plan Administrator Agreement, Operating Budget, Wind-Down Budget, Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases which will be Filed no later than the Election Notice Deadline), or such other date as may be approved by the Bankruptcy Court, each of which documents, agreements, schedules and exhibits constitute, and are filed as part of, the Plan Supplement, including as any of such documents may be thereafter amended, supplemented, or modified from time to time in accordance with the terms hereof.  If the Debtor consummates the Reorganization, the Plan Supplement shall include, without limitation, the following: (a) the Reorganized Debtor Governance Documents; (b) the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (d) Reorganization Notice; (e) Amended and Restated Loan Documents; (f) Subordinated Note; (g) a list of Retained Causes of Action; (h) the Plan Administrator Agreement, and (i) any and all other documentation necessary to effectuate the Reorganization or that is contemplated under the Plan.  If the Debtor consummates an Asset Sale Wind-Down, the Plan Supplement shall include, without limitation, the following: (i) the Amended Debtor Organizational Documents; (ii) the Wind-Down Budget; (iii) the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases; (iv) a list of Retained Causes of Action and other Wind-Down Assets; (v) the Asset Purchase Agreement; (vi) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (vii) Asset Sale Notice; (viii) Amended and Restated Loan Documents; (ix) the Subordinated Note; (x) the Plan Administrator Agreement; and (xi) any and all other documentation necessary to effectuate the Asset Sale Wind-Down or that is contemplated under the Plan.  The Debtor shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date in accordance with the terms of the Plan

(including, for the avoidance of doubt, to reflect the terms and conditions of the Asset Sale Wind-Down).

102. "*Postpetition Interest Rate*" means either (a) 11.75% (approximately $656,956 per month), or (b) if the Secured Lender Interest Payment is received by the Secured Lender on or before January 12, 2024 and the Effective Date occurs after February 29, 2024 as a result of any Action Outside of Debtor's Control, 10.375% (approximately $580,078 per month).

103. "*Prior Lender*" means Bank Hapoalim B.M.

104. "*Prior Lender Proof of Claim*" means Proof of Claim No. 16 filed by the Prior Lender against the Debtor and its Estate for amounts asserted by the Prior Lender to be due and owing under the Loan Documents as of the Petition Date.

105. "*Priority Tax Claim*" means any Claim of a Governmental Unit against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

106. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of (i) all Allowed Claims or Allowed Interests, as applicable, in that Class, or (ii) all Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Claim or Interest under the Plan.

107. "*Professional*" means an Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

108. "*Professional Fee Claim*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) for compensation for services rendered or reimbursement of expenses incurred by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

109. "*Professional Fee Escrow Account*" means an account to be funded by the Debtor in an amount equal to the Professional Fee Reserve Amount with Cash on or prior to the Effective Date.

110. "*Professional Fee Reserve Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur rendering services to the Debtor prior to and through the Confirmation Date as estimated by such Professionals in accordance with Article II.B.3 of the Plan.

111. "*Proof of Claim*" means a written proof of Claim Filed against the Debtor in the Chapter 11 Case.

13

112.     "*Purchaser*" means the purchaser, other than the Secured Lender *via* a Credit Bid, under the Asset Purchase Agreement.

113.     "*Reinstated*" means, with respect to any Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

114.     "*Related Party*" means, collectively, current and former officers, directors, mangers, members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, management companies, fund advisors, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investments bankers, consultants, representatives, and other professionals.

115.     "*Released Parties*" means, collectively, in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) Secured Lender; (d) the Existing Equity Holder; (e) Ace; (f) any Purchaser; (g) each current and former Affiliate of each entity in clauses (a) through (f); and (h) each Related Party of each entity in clauses (a) through (g); *provided*, that none of the Paz Parties, Northwind Parties, Holders of Mechanic's Lien Bond Claims or Holders of Mechanic's Lien Claims shall be a Released Party.

116.     "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Secured Lender; (d) the Existing Equity Holder; (e) Ace; (f) any Purchaser; (g) all Holders of Claims against or Interests in the Debtor that vote to accept the Plan, or are deemed to accept the Plan and do not timely object to the releases provided for herein; (h) all Holders of Claims against the Debtor that either (1) vote to reject the Plan or (2) receive a ballot, but do not vote to accept or reject the Plan, and, in either case, do not either (x) affirmatively elect to "opt-out" of being a releasing party in accordance with the Solicitation Materials or (y) timely object to the Plan's third-party release provisions; (i) each current and former Affiliate of each entity in clause (a) through clause (h); and (j) each Related Party of each entity in clause (a) through clause (i), *provided* that Holders of Mechanic's Lien Bond Claims or Holders of Mechanic's Lien Claims shall not be Releasing Parties.

117.     "*Reorganization*" means, collectively, (a) entry into the Amended and Restated Loan Documents; (b) Reinstatement of all Interests by the Existing Equity Holder, (c) execution of the Reorganized Debtor Governance Documents; (d) vesting of the Debtor's assets in the Reorganized Debtor in accordance with the Plan; and (e) the other transactions that the Debtor or Reorganized Debtor, as applicable, reasonably determines is necessary or appropriate to implement the foregoing, in each case, in accordance with the Plan.

118.     "*Reorganization Notice*" means that certain notice evidencing the Debtor's election to proceed with the Reorganization and estimated percentage recoveries thereunder, filed by the Debtor with the Bankruptcy Court not later than Election Notice Deadline.

119.     "*Reorganized Debtor*" means the Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

120.    "***Reorganized Debtor By-Laws***" means, solely with respect to the Reorganization, the form of the by-laws, or the limited liability company agreements, partnership agreements, and/or shareholder agreements, as applicable, of the Reorganized Debtor effective on and after the Effective Date, each substantially in the form included in the Plan Supplement.

121.    "***Reorganized Debtor Certificate of Incorporation***" means, solely with respect to the Reorganization, the form of the certificate of incorporation, the certificate of formation, or other analogous formation documents as applicable, of the Reorganized Debtor, effective on and after the Effective Date, each substantially in the form included in the Plan Supplement.

122.    "***Reorganized Debtor Governance Documents***" means, as applicable and solely with respect to the Reorganization, the Reorganized Debtor Certificate of Incorporation, the Reorganized Debtor By-Laws, or such other applicable formation or shareholder documents of the Reorganized Debtor, effective on and after the Effective Date, each substantially in the form included in the Plan Supplement.  For the avoidance of doubt, the Reorganized Debtor Governance Documents shall be subject to the applicable terms and conditions of the Amended and Restated Loan Documents.

123.    "***Retained Causes of Action***" means certain Causes of Action owned and/or belonging to the Debtor that are not waived, relinquished, exculpated, released, compromised, transferred, or settled pursuant to the Plan or a Final Order of the Bankruptcy Court, as included in the Plan Supplement and as same may be amended, modified, or supplemented from time to time by the Debtor; *provided*, that Retained Causes of Action shall not include any Causes of Action against any Released Party.

124.    "***Schedule of Assumed Executory Contracts and Unexpired Leases***" means the schedule (as may be amended) as determined by the Debtor and, only in the case of an Asset Sale Wind-Down, the Purchaser or Secured Lender, as the case may be, of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Debtor and, in the case of an Asset Sale Wind-Down, assigned to the Purchaser or the Secured Lender, as the case may be, pursuant to the Plan, and which schedule will set forth the Debtor's proposed amount of the applicable Cure Claim and be included in the Plan Supplement.

125.    "***Schedule of Rejected Executory Contracts and Unexpired Leases***" means the schedule (as may be amended), as determined by the Debtor or the Reorganized Debtor, as applicable, of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Debtor pursuant to the Plan, and which schedule will be included in the Plan Supplement.

126.    "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

127.    "***SEC***" means the Securities and Exchange Commission.

128.    "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order (including as set forth in, and stipulated to by the Debtor in the Cash Collateral Order), or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a Secured Claim.

129.    "*Secured Lender*" means 225 Bowery Lender LLC.

130.    "*Secured Lender Claim*" means the Claim held by Secured Lender as the transferee and assignee of all of the Prior Lender's rights, claims, title and obligations in and under the Loan Documents, (i) as asserted by the Prior Lender through the Prior Lender Proof of Claim, as may be modified and amended from time to time *plus* (ii) postpetition interest at the Postpetition Interest Rate and any other fees or other obligations arising after the Petition Date under the Loan Documents, as may be modified and amended pursuant to, and consistent with, the Plan.

131.    "*Secured Lender Interest Payment*" means a Cash payment by the Debtor to the Secured Lender in the amount of $4,000,000 on the Effective Date, unless such payment has been made before the Effective Date pursuant to a separate order of the Bankruptcy Court.

132.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

133.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

134.    "*SNDA*" means that certain Subordination, Non-Disturbance and Attornment Agreement, effective as of March 4, 2019, between Prior Lender and Ace.

135.    "*SNDA Adversary Proceeding*" means that certain adversary proceeding captioned *Bank Hapaolim B.M. v. 225 Bowery LLC, et. al.*, Adv. Pro. No. 23-50323 (TMH).

136.    "*SNDA Counterclaims*" means "SNDA Counterclaims" as defined in Ace Complaint above.

137.    "*SNDA Crossclaims*" means "SNDA Crossclaims" as defined in Ace Complaint above.

138.    "*Sole Manager*" means Nat Wasserstein, as sole manager of the Reorganized Debtor, appointed in a Reorganization consistent with the Reorganized Debtor Governance Documents and this Plan.

139.    "*Solicitation Materials*" means all solicitation materials with respect to the Plan, including the Disclosure Statement and related ballots, which have been approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

140.    "*Subordinated Note*" means an unsecured, non-interest bearing promissory note in the principal amount of up to $875,000, substantially in the form included in the Plan Supplement, to be issued to Ace pursuant to the Ace Settlement Agreement and as set forth in Article III.C.4. of the Plan.

141.    "*Subsequent Owners*" means KAL Bowery LLC, TLLULE Bowery LLC and VNAA Bowery LLC.

142.    "*Supplemental Cure Notice*" means a notice setting forth a Cure Claim for an Executory Contract or Unexpired Lease in an amount that is not zero dollars ($0.00) and, if applicable, is different from what is set forth in the October Cure Notice.

143.    "*Tax Code*" means the United States Internal Revenue Code of 1986, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

144.    "*Unexpired Lease*" means a lease to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

145.    "*Uniform Commercial Code*" means the Uniform Commercial Code as may be amended from time to time in effect in the State of Delaware or in any other state to the extent it may be applicable to any security interests in property of the Debtor.

146.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

147.    "*Union*" means the Hotel and Gaming Trades Council, AFL-CIO f/k/a New York Hotel and Motel Trades Council, AFL-CIO.

148.    "*Union Claims*" means the Claims held by the Union and Union Funds as asserted, respectively, in Proofs of Claim Nos. 17 and 18 on the Claims Register as each may be amended, including by the Bankruptcy Court, pursuant to, and in connection with, Sections 1113 and/or 114 of the Bankruptcy Code and/or the Amended and Restated CBA.

149.    "*Union Funds*" means the NYHTC and Hotel Ass'n of NYC Inc. Employee Benefit / Industry Benefit Funds, IWA Funds.

150.    "*Union Obligations*" means all Claims of the Union, Union Funds, and/or its members in or against the Debtor, including those arising from, or otherwise related to, the Union Claims and the Industry-Wide Agreement between New York Hotel and Motel Trades Council, AFL-CIO and Hotel Association of New York City, Inc. effective July 1, 2012, (as amended, restated, supplemented, or otherwise modified from time to time by Memorandums of Understanding or otherwise).

151.    "*Unsecured Claim*" means any Claim against the Debtor that is neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court.

152.    "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

153.    "***Voting Deadline***" means the date and time set forth in the Disclosure Statement Order by which votes to accept or reject the Plan.

154.    "***Voting Record Date***" means the date established as the voting record date pursuant to the Disclosure Statement Order.

155.    "***Wind-Down Assets***" means, on the Effective Date, in an Asset Sale Wind-Down, all assets of the Estate vested in the Debtor or thereafter held by Debtor from time to time, to be administered by the Plan Administrator, including any properties, assets, interests and rights not sold pursuant to the Asset Sale including, without limitation, the Retained Causes of Action.

156.    "***Wind-Down Budget***" means Cash to fund the Debtor in an Asset Sale Wind-Down.

B.    *Rules of Interpretation*

For purposes of the Plan, except as otherwise provided herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, of the Plan; (6) all references herein to exhibits are references to exhibits in the Plan Supplement; (7) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) any effectuating provisions may be interpreted by the Reorganized Debtor or the Plan Administrator, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control, absent contrary order of the Court; (9) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (11) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) references to docket numbers are references to the docket numbers of documents Filed in the Chapter 11 Case under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (14) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (15) the words "include,"

"includes," and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) references to "shareholders," "directors," and/or "officers" shall also include "members," "partners," and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (17) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (18) unless otherwise specified herein, references from or through any date mean from and including or through and including; and (19) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); *provided*, that corporate, limited liability company, or partnership governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable

## E.    Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## F.    Reference to the Debtor or the Reorganized Debtor

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

## G.    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any document, schedule, or exhibit contained in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document, schedule, or exhibit,

or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**Article II.**

**ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.    *Administrative Claims*

1.    <u>Administrative Claims</u>

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, or to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Case, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim in accordance with the following: (a) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than thirty (30) days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as applicable; or (e) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

2.    <u>Administrative Claims Bar Date</u>

A notice setting forth the Administrative Claims Bar Date will be Filed on the Bankruptcy Court's docket and served with notice of entry of the Confirmation Order and occurrence of the Effective Date.  No other notice of the Administrative Claims Bar Date will be provided.  Except as otherwise provided in this Article II.A.2, requests for payment of Administrative Claims that accrued on or before the Effective Date (other than Professional Fee Claims) must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order and occurrence of the Effective Date no later than the Administrative Claims Bar Date.  **Holders of Administrative Claims that are required to, but do not File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative**

20

**Claims against the Debtor or the Reorganized Debtor or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. If for any reason such Administrative Claim is incapable of being forever barred and discharged, then the Holder of such Claim shall not have recourse to any property of the Reorganized Debtor to be distributed pursuant to the Plan or that vests in the Reorganized Debtor.** Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order of the Bankruptcy Court.

Objections to requests for payment of an Administrative Claim, if any, must be Filed and served on the Reorganized Debtor or the Plan Administrator, as applicable, and the requesting party no later than the Administrative Claims Objection Deadline. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims that are the subject of a timely objection shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

B.     *Professional Fee Claims*

1.     <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims must be filed no later than the first Business Day that is twenty-one (21) days after the Effective Date. The objection deadline relating to a final fee application shall be 4:00 p.m. (prevailing Eastern time) on the date that is twenty-one (21) calendar days after the filing of such final fee application. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any applicable Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. The Allowed amount of Professional Fee Claims owing to the Professionals, after taking into account any prior payments, shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account promptly following the date when such Claims are Allowed by a Final Order. After all Professional Fee Claims have been paid in full, the escrow agent shall promptly return any amounts remaining in the Professional Fee Escrow Account to the Reorganized Debtor or Debtor, as applicable.

2.     <u>Professional Fee Escrow Account</u>

As soon as reasonably practicable after the Confirmation Date, and no later than one Business Day prior to the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Such funds shall not be considered property of the Estate, the Debtor, or the Reorganized Debtor.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account as soon as reasonably

practicable after such Professional Fee Claims become payable in accordance with the Interim Compensation Order or are Allowed by an order of the Bankruptcy Court; *provided*, that obligations with respect to Allowed Professional Fee Claims shall not be limited nor deemed limited to the balance of funds held in the Professional Fee Escrow Account. When all Allowed Professional Fee Claims have been irrevocably paid in full, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtor or Debtor, as applicable, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3.    Professional Fee Reserve Amount

The Professionals shall provide an estimate of their fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor no later than five (5) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional. If a Professional does not provide an estimate, the Debtor may estimate the unbilled fees and expenses of such Professional, taking into account prior payments; *provided*, *however*, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account; *provided*, that the Reorganized Debtor, or Debtor, as applicable, shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.    Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Confirmation Date, the Debtor or Plan Administrator shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor or the Reorganized Debtor, as applicable. If the Debtor or Plan Administrator disputes the reasonableness of any such invoice, the Debtor, the Reorganized Debtor, as applicable, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice. The undisputed portion of such invoice shall be paid in the ordinary course of business, and the disputed portion of such invoice shall not be paid until the dispute is resolved. From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor, Reorganized Debtor or Plan Administrator may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

D.      *Statutory Fees*

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtor shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. Thereafter, the Debtor or Reorganized Debtor, as applicable, shall pay all U.S. Trustee fees due and owing under section 1930 of the Judicial Code in the ordinary course until the earlier of the entry of a final decree closing the Chapter 11 Case, or the Bankruptcy Court enters an order converting or dismissing the Chapter 11 Case. Any deadline for filing Administrative Claims or Professional Fee Claims shall not apply to U.S. Trustee fees.

## Article III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto. All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of other such Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.      *Summary of Classification*

The classification of Claims and Interests against the Debtor pursuant to the Plan is as set forth below. All of the potential Classes for the Debtor are set forth herein.[2]

The following chart summarizes the classification of Claims and Interests pursuant to the

---

[2]     The Debtor reserve the right to separately classify Claims to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable law.

Plan.[3]

| Class | Claim | | Status | Voting Rights |
|---|---|---|---|---|
| 1 | Other Priority Claims | | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Secured Lender Claim | | Impaired | Entitled to Vote |
| 4 | Ace Secured Claim | | Impaired | Entitled to Vote |
| 5 | Mechanic's Lien Bond Claims | *Under a Reorganization* | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| | | *Under an Asset Sale Wind-Down* | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Mechanic's Lien Claims | *Under a Reorganization* | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| | | *Under an Asset Sale Wind-Down* | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Union Claims | *Under a Reorganization* | Impaired | Entitled to Vote |
| | | *Under an Asset Sale Wind-Down* | Impaired | Deemed to Reject Regardless of Vote |
| 8 | General Unsecured Claims | *Under a Reorganization* | Impaired | Entitled to Vote |
| | | *Under an Asset Sale Wind-Down* | Impaired | Deemed to Reject Regardless of Vote |
| 9 | Existing Equity Holder | *Under a Reorganization* | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

---

[3]   The information in the table is provided in summary form and is qualified in its entirety by Article III.C hereof.

| Class | Claim | | Status | Voting Rights |
|---|---|---|---|---|
| | Interests in Debtor | *Under an Asset Sale Wind-Down* | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.    *Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.    <u>*Class 1 — Other Priority Claims*</u>

(a)    *Classification*: Class 1 consists of Other Priority Claims.

(b)    *Treatment:* Except to the extent that the Holder of the Allowed Other Priority Claims agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for the Allowed Other Priority Claims, each Holder of the Allowed Other Priority Claims will receive, at the option of the Debtor or Reorganized Debtor, as applicable: (1) payment in full of the unpaid portion of the Other Priority Claim on, or as soon as reasonably practicable thereafter, the latter of the Effective Date or such date that the Priority Claim becomes an Allowed Claim, or (2) such other treatment that will render the claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 1 is Unimpaired.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.    <u>*Class 2 — Other Secured Claims*</u>

(a)    *Classification*: Class 2 consists of Other Secured Claims.

(b)    *Treatment:* Except to the extent that the Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim will receive at the option of the Debtor or Reorganized Debtor, as applicable: (i) payment in full in Cash of such Allowed Other Secured Claim on, or as soon as reasonably practicable thereafter, the latter of the Effective Date or such date that the Other Secured Claim becomes an Allowed Claim, (ii) the collateral securing such Allowed Other Secured Claim, (iii) reinstatement of such Allowed Other Secured

Claim, or (iv) such other treatment that will render claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*: Class 2 is Unimpaired.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Plan.

3.     <u>*Class 3 — Secured Lender Claim*</u>

(a)     *Classification*: Class 3 consists of the Secured Lender Claim, which shall be Allowed in the aggregate principal amount of $79,498,046.36 *plus* interest from the Petition Date through the Effective Date at the Postpetition Interest Rate *plus* all unpaid fees arising under the Loan Documents after the Petition Date *minus* the Secured Lender Interest Payment (but only if such payment was made before the Effective Date).

(b)     *Treatment*: Except to the extent that the Holder of the Allowed Secured Lender Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed Secured Lender Claim, the Holder of the Allowed Secured Lender Claim shall receive the following (i) or (ii):

(i)     **If the Debtor consummates the Reorganization**:

(A)     On the Effective Date, the Secured Lender Interest Payment (unless such payment was made before the Effective Date), which payment shall reduce the Allowed Secured Lender Claim on a dollar-for-dollar basis and be applied toward accrued interest, fees, costs, and other non-principal charges; and

(B)     On the Effective Date, issuance of the Amended and Restated Loan Documents;

<u>***-or-***</u>

(ii)     **If the Debtor consummates an Asset Sale Wind-Down**: On the Effective Date, either (a) ownership of the Debtor's assets pursuant to a Credit Bid as more fully identified in the Asset Sale Notice and the Asset Purchase Agreement, <u>or</u> (b) payment in full in Cash of the Allowed Secured Lender Claim if the sale is to a Purchaser.

(c)     *Voting*: Class 3 is Impaired.  Holder of Allowed Secured Lender Claim is entitled to vote to accept or reject the Plan.

4.  *Class 4 —Ace Secured Claim*

    (a)   *Classification*: Class 4 consists of the Ace Secured Claim, which shall be Allowed in the aggregate amount of $10,474,628.18.

    (b)   *Treatment*: Except to the extent that the Holder of the Allowed Ace Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed Ace Secured Claim, the Holder of the Allowed Ace Secured Claim shall receive:

        (i)   On the Effective Date, payment from the Debtor or Reorganized Debtor, as applicable, of $3,000,000 in Cash; and

        (ii)   On the Effective Date, the Subordinated Note issued from (x) the Reorganized Debtor, in a Reorganization, <u>or</u> (y) issued from the Debtor and assigned to, and assumed by, either (A) the Secured Lender or (B) the Purchaser; in either case, in connection with an Asset Sale in an Asset Sale Wind-Down.

    (c)   On the Effective Date, the Ace Judgment Lien shall be deemed terminated and discharged in all respects. Ace shall execute any and all documents reasonably necessary to effectuate such termination and discharge.

    (d)   *Voting*: Class 4 is Impaired.  The Holder of the Allowed Ace Secured Claim is entitled to vote to accept or reject the Plan.

5.  *Class 5 — Mechanic's Lien Bond Claims*

    (a)   *Classification*: Class 5 consists of Mechanic's Lien Bond Claims.

    (b)   *Treatment*:

        (i)   **If the Debtor consummates the Reorganization:** Except to the extent that a Holder of the Allowed Mechanic's Lien Bond Claims agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed Mechanic's Lien Bond Claims, the Holders of the Allowed Mechanic's Lien Bond Claims will receive treatment sufficient to render their Mechanic's Lien Bond Claims Unimpaired in accordance with Section 1124 of the Bankruptcy Code.

           ***-or-***

27

(ii) ***If the Debtor consummates an Asset Sale Wind-Down:*** The GUC Wind-Down Pool shall be distributed Pro Rata to Class 5, Class 6, Class 7 and Class 8 such that each Holder of (A) an Allowed Mechanic's Lien Bond Claim, (B) an Allowed Mechanic's Lien Claim, (C) an Allowed Union Claim and (D) an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Wind-Down Pool.

(c) *Voting*: Class 5 is Unimpaired.  Holders of Allowed Mechanic's Lien Bond Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Allowed Mechanic's Lien Bond Claims are not entitled to vote to accept or reject the Plan.

6.   <u>*Class 6 —Mechanic's Lien Claims*</u>

(a) *Classification*: Class 6 consists of Mechanic's Lien Claims.

(b) *Treatment*:

(i) ***If the Debtor consummates the Reorganization:*** The Mechanic's Lien Claims are contingent, unliquidated, and disputed Claims with respect to the Debtor and the Holders thereof are the beneficiaries of the applicable Mechanic's Lien Bond.  The Holders of the Allowed Mechanic's Lien Claims will receive treatment sufficient to render their Mechanic's Lien Claims Unimpaired in accordance with Section 1124 of the Bankruptcy Code.

***-or-***

(ii) ***If the Debtor consummates an Asset Sale Wind-Down:*** The GUC Wind-Down Pool shall be distributed Pro Rata to Class 5, Class 6, Class 7 and Class 8 such that each Holder of (A) an Allowed Mechanic's Lien Bond Claim, (B) an Allowed Mechanic's Lien Claim, (C) an Allowed Union Claim and (D) an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Wind-Down Pool.

(c) *Voting*: Class 6 is Unimpaired.  Holders of Allowed Mechanic's Lien Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Allowed Mechanic's Lien Claims are not entitled to vote or accept or reject the Plan.

7.   <u>*Class 7 — Union Claims*</u>

(a) *Classification*: Class 7 consists of Union Claims.

(b)     *Treatment*: Except to the extent that any Holder of the Allowed Union Claims agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed Union Claims, the Holders thereof shall receive either:

        (i)     ***If the Debtor consummates the Reorganization:*** (A) Mutual termination of the CBA, and (B) Cash payments to the Union in an amount and upon terms to be agreed upon by the Debtor and the Union on account of the Union Claims.

        ***-or-***

        (ii)    ***If the Debtor consummates an Asset Sale Wind-Down***: The GUC Wind-Down Pool shall be distributed Pro Rata to Class 5, Class 6, Class 7 and Class 8 such that each Holder of (A) an Allowed Mechanic's Lien Bond Claim, (B) an Allowed Mechanic's Lien Claim, (C) an Allowed Union Claim and (D) an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Wind-Down Pool.

(c)     *Voting*: Class 7 is Impaired.  The Holders of the Allowed Union Claims are entitled to vote to accept or reject the Plan.

8.     *Class 8 — General Unsecured Claims*

(a)     *Classification*: Class 8 consists of all General Unsecured Claims.

(b)     *Treatment*: Except to the extent that the Holders of the Allowed General Unsecured Claims agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed General Unsecured Claims, the Holders thereof shall receive either:

        (i)     ***If the Debtor consummates the Reorganization***: each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Reorganization Payments, which shall be paid in three (3) equal installments on each of (i) a date chosen by the Plan Administrator that is not later than six (6) months following the Effective Date, (ii) a business Day in 2025 chosen by the Plan Administrator, and (iii) not later than thirty (30) months following the Effective Date; *provided however* that if a General Unsecured Claim is not Allowed as of the date of any such payment, the Holder shall receive such payment within thirty (30) days following the Allowance of such General Unsecured Claim.

        ***-or-***

29

   (ii) ***If the Debtor consummates an Asset Sale Wind-Down***: The GUC Wind-Down Pool shall be distributed Pro Rata to Class 5, Class 6, Class 7 and Class 8 such that each Holder of (A) an Allowed Mechanic's Lien Bond Claim, (B) an Allowed Mechanic's Lien Claim, (C) an Allowed Union Claim and (D) an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Wind-Down Pool.

 (c) Voting: Class 8 is Impaired.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

 9. <u>*Class 9 — Existing Equity Holder Interests in Debtor*</u>

 (a) *Classification*: Class 9 consists of all Interests in Debtor.

 (b) *Treatment*:

   (i) ***If the Debtor consummates the Reorganization***: The Existing Equity Holder's Interest in the Debtor shall be Reinstated, vest in, or otherwise assumed by, the Reorganized Debtor and the Existing Equity Holder shall retain all Interests in the Reorganized Debtor in accordance with the Plan.

    ***-or-***

   (ii) ***If the Debtor consummates an Asset Sale Wind-Down***: All Interests will be cancelled, extinguished, and will be of no further force or effect and the Holders of Interests, including the Existing Equity Holder, will not be entitled to receive any distribution on account of such Interests.

 (c) *Voting*: Class 9 is not entitled to vote because it is (i) Unimpaired in a Reorganization and is deemed to accept the Plan and (ii) Impaired in an Asset Sale Wind-Down, and not entitled to a distribution, and is deemed to reject the Plan.

**D.** *Special Provision Governing Unimpaired Claims*

 Except as specifically provided in the Plan, nothing in the Plan shall affect the Debtor's or the Reorganized Debtor's rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**E.** *Voting Classes; Presumed Acceptance by Non-Voting Classes*

 If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request

the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

F.      *Acceptance by Impaired Classes*

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if Holders of at least two-thirds in dollar amount and more than one-half in number of the Claims in such Class entitled to vote that actually vote on the Plan have voted to accept the Plan.

G.      *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.C of the Plan.  The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserve the right to alter, amend, or modify the Plan, or any document in the Plan Supplement, and in accordance with Article XI.A of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to the Debtor.

H.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests, and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Debtor or the Reorganized Debtor, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

I.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

*J.      Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## Article IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.      General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action (other than the Retained Causes of Action), and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan, including the Ace Settlement.   The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action (other than the Retained Causes of Action), and controversies, including the Secured Lender Claim and those Claims resolved by the Ace Settlement, pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, Causes of Action (other than the Retained Causes of Action), and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtor and their Estate.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

In connection with the resolution and settlement of the Ace Secured Claim as provided for herein, within ten (10) days of the Effective Date, the following actions shall be dismissed with prejudice, without costs to any party, (i) the SNDA Adversary Proceeding; (ii) the Ace Preference Adversary Proceeding; and (iii) any and all other pending actions in the New York State Supreme Court involving the Debtor, Ace, the Prior Lender, Secured Lender, and all other parties identified in such actions. On the Effective Date, Ace and the Debtor shall, and are hereby authorized to, take all such actions necessary or appropriate to effect such dismissals.

*B.      Exemption from Certain Transfer Taxes and Recording Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtor to the Reorganized Debtor or to any other Entity) of property pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the Plan Implementation Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other

instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fees, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and, upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or government assessment.

C.      *Retained Causes of Action and Dismissal of Litigation*

Unless any Retained Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor or Reorganized Debtor, as applicable, shall retain all rights to commence, prosecute, or settle, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, which shall vest in the Debtor or Reorganized Debtor, as applicable, pursuant to the terms of the Plan.  The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court, and the Plan Administrator's rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Plan Administrator may pursue such Retained Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Retained Causes of Action to the extent the Plan Administrator deems appropriate, including on a contingency fee basis.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator will not pursue any and all available Retained Causes of Action against them.  Unless any Retained Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Debtor or Reorganized Debtor, as applicable, expressly reserves all Retained Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The Debtor and Reorganized Debtor, as applicable, reserve and shall retain the foregoing Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan.

D.      *Plan Implementation Transactions*

Before, on, and after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, shall, among other things, enter into any transaction, and shall take any action as may be necessary or advisable to effectuate the Plan Implementation Transactions or any other transaction or action contemplated herein, including, to the extent applicable  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and Plan Supplement; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable law; (4) the execution and delivery of the Amended and Restated Loan Documents and the Subordinated Note, and any filings related thereto; (5) the execution and delivery of the Reorganized Debtor Governance Documents, and any certificates or articles of incorporations, by-laws, or such other applicable analogous formation or shareholder documents (if any) of the Reorganized Debtor (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtor and/or the Reorganized Debtor, as applicable); (6) the execution and consummation of the Ace Settlement and resolution and settlement of the Secured Lender Claim, (7) all other actions that the Debtor or Reorganized Debtor, as applicable, determines to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to sections 1123, 1141 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Plan Implementation Transactions.

E.      *The Reorganization*

***If determined by the Debtor, in its sole discretion, to proceed with the Reorganization as set forth in the Reorganization Notice, the Debtor shall implement the Reorganization as follows:***

1.      <u>Sources of Consideration for Plan of Reorganization Distributions</u>

The Debtor or the Reorganized Debtor, as applicable, shall fund distributions under the Plan with Cash on hand and income or other proceeds generated by the operation of the Reorganized Debtor.  Cash payments to be made pursuant to the Plan will be made by the Disbursing Agent.  Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such

distribution or issuance; *provided*, that to the extent that a term of the Plan conflicts with the term of any such instruments or other documents, the terms of the Plan shall govern.

        2.      <u>Reinstatement of Existing Equity Holder Interests and Cancellation of Other Agreements and Interests</u>

On the Effective Date, (i) the Existing Equity Holder Interests shall be Reinstated and the Existing Equity Holder Interests shall become all of the Interests in Reorganized Debtor and (ii)(1) except as otherwise provided herein, including the prior clause (i), all notes, bonds (other than the Mechanic's Lien Bonds), agreements, instruments, certificates, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, indentures, and any other instruments or documents directly or indirectly evidencing, creating, or, relating to any indebtedness or obligations of, or ownership interest, equity, or portfolio interest in, the Debtor, or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity ownership, or profits interests in the Debtor giving rise to any Claims or Interests shall be canceled, discharged, surrendered, and of no force or effect and deemed surrendered to the Debtor and the Debtor shall not have any continuing obligations thereunder; and (2) the Interests in the Debtor and Claims against the Debtor created by, in each case, the foregoing (ii)(1) shall be fully released, settled, compromised, and discharged. The Holders of, or parties to, such agreements, Interests and Claims in the foregoing (ii)(1) and (ii)(2) will have no rights arising from or related to such agreements, Interests and Claims; *provided*, that, notwithstanding Confirmation or the occurrence of the Effective Date, any such canceled agreements or Interests and Claims that govern the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of enabling Holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein.

        3.      <u>Reorganized Debtor Governance Documents</u>

The Reorganized Debtor Governance Documents shall, among other things: (a) substantially conform to the forms contained in the Plan Supplement; (b) provide that the Existing Equity Holder shall retain and/or receive all Interests in the Reorganized Debtor; and (c) prohibit the issuance of non-voting equity securities in accordance with section 1123(a)(6) of the Bankruptcy Code.

On or immediately before the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will file the respective Reorganized Debtor Governance Documents with the applicable Secretary of State and/or other applicable authorities in the state of incorporation or formation in accordance with the applicable laws of its respective state of incorporation or formation, to the extent required for such Reorganized Debtor Governance Documents to become effective. After the Effective Date, the Reorganized Debtor may amend, amend and restate, supplement or modify the Reorganized Debtor Governance Documents in accordance with their terms, and the Reorganized Debtor may file their respective formation, organizational, and constituent documents as permitted by the laws of the applicable jurisdiction of incorporation or formation and the terms of such documents.

4.      Amended and Restated Loan Documents and Subordinated Note

On the Effective Date, the Reorganized Debtor shall enter into the Amended and Restated Loan Documents and shall issue the Subordinated Note.  Confirmation of the Plan shall be deemed approval of the Amended and Restated Loan Documents, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtor to enter into and execute the Amended and Restated Loan Documents.

On the Effective Date, any Liens and security interests to be granted in accordance with the Amended and Restated Loan Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the applicable collateral in accordance with the respective terms of the Amended and Restated Loan Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Amended and Restated Loan Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.  The Reorganized Debtor and the Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order (subject solely to the occurrence of the Effective Date) and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

5.      Corporate Existence

Except as otherwise provided in the Plan, the Reorganized Debtor Governance Documents, or any agreement, instrument, or other documented incorporated in the Plan or the Plan Supplement, on the Effective Date, the Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a legal entity, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which the Debtor is incorporated or formed and pursuant to the Reorganized Debtor Governance Documents, and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable law.

After the Effective Date, the Reorganized Debtor Governance Documents may be amended or modified in accordance with its respective terms without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

6.    <u>Vesting of Assets</u>

Except as otherwise provided in the Plan, the Confirmation Order, or in any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property (including all interests, rights, and privileges related thereto) in the Debtor's Estate and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens securing obligations on account of the Amended and Restated Loan Documents or Other Secured Claims that are Reinstated pursuant to the Plan). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of its respective property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, in each case subject to the Plan and the Reorganized Debtor Governance Documents.

In connection with the vesting of the assets in Reorganized Debtor, any attorney-client, work-product or other privilege or immunity attaching to any documents or communications (whether written or oral) shall vest in Reorganized Debtor, subject to the terms of the Amended Organizational Documents and the Plan.  The Debtor, the Reorganized Debtor, and the Plan Administrator, as applicable, are authorized to take all necessary actions to effectuate the transfer of such privileges, protections, and immunities.

7.    <u>Plan Administrator</u>

The Plan Administrator shall act in the same fiduciary capacity as applicable to a board of managers, directors, members and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, members or officers of the Debtor shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager and sole officer of Reorganized Debtor.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Debtor to implement the Plan.  The foregoing shall not limit the authority of the Plan Administrator to continue the employment of any former manager, director, or officer, to implement the Plan. The Reorganized Debtor shall be deemed to be substituted as the party-in-lieu of the Debtor in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

8.    <u>Corporate Action</u>

Upon the Effective Date, all actions contemplated by the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other Entity,

including: (a) implementation of the Reorganization; (b) entry into the Amended and Restated Loan Documents and the incurrence of credit and the grant of security interests thereunder; (c) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (d) adoption of the Reorganized Debtor Governance Documents; (e) execution, consummation, and implementation of the Ace Settlement; and (f) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by, the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, as applicable, and any corporate action required by the Debtor or the Reorganized Debtor, as applicable, in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtor or the Reorganized Debtor, as applicable.

Before, on, or after the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor or the Reorganized Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, including the Amended and Restated Loan Documents, the Reorganized Debtor Governance Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing or contemplated by the Plan, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Article IV.E.8 shall be effective notwithstanding any requirements under non-bankruptcy law.

9.      Sole Manager of the Reorganized Debtor

As of the Effective Date, (i) the terms of any current managers, directors, and officers of the Debtor shall expire and (ii) the Sole Manager, consistent with the Reorganized Debtor Governance Documents, shall be appointed and the Sole Manager shall have sole authority (1) over the Reorganized Debtor, (2) to amend the Reorganized Debtor Governance Documents consistent with the terms thereof and the applicable terms of the Amended and Restated Loan Documents (including the composition of any board of directors, managers or other governing body of the Reorganized Debtor), and (3) to implement the terms of the Plan as the Plan Administrator in connection with a Reorganization.

10.     Effectuating Documents; Further Transactions

Prior to, on, and after the Effective Date, the Debtor, the Reorganized Debtor, the Plan Administrator, and the Sole Manager, each as applicable, are authorized to, and may, issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the Amended and Restated Loan Documents, the Reorganized Debtor Governance Documents, and any securities issued pursuant to the Plan in the name of and on behalf of the Debtor or Reorganized Debtor, as applicable, in each case, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123, section 1141 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

11.    Indemnification Provisions

On and as of the Effective Date, the Indemnification Provisions shall be deemed assumed and irrevocable and will remain in full force and effect and survive the effectiveness of the Plan Unimpaired and unaffected, and the Reorganized Debtor Governance Documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtor's and the Reorganized Debtor's current and former directors, members, officers, employees, agents, managers, attorneys, and other professionals, and such current and former directors, members, officers, and managers' respective Affiliates at least to the same extent as such documents of each of the respective Debtor on the Petition Date but in no event greater than as permitted by law, against any Claims or Causes of Action; *provided,* that the Reorganized Debtor shall not indemnify any such Person for any Claims or Causes of Action arising out of or related to any act or omission that is a criminal act or constitutes actual fraud, gross negligence or willful misconduct or for which indemnification is not permissible under law and, *provided further*, that the Indemnification Provisions shall not be assumed as to, and the Reorganized Debtor shall not indemnify any of, the Paz Parties or the Northwind Parties. The Reorganized Debtor shall not amend and/or restate its respective organizational documents before, on or after the Effective Date to terminate, reduce, discharge, impair or adversely affect in any way (i) any of the Reorganized Debtor's obligations referred to in the immediately preceding sentence, or (ii) the rights of such current and former directors, members, officers, employees, agents, managers, attorneys, and other professionals, and such current and former directors, members, officers, and managers' respective Affiliates referred to in the immediately preceding sentence; provided, that in either case of the foregoing (i) and (ii) the Debtor may make any changes or amendments to its organization documents to ensure that Indemnification Provisions exclude, and that the Reorganized Debtor shall not indemnify any of, the Paz Parties or the Northwind Parties.  Notwithstanding anything to the contrary in Article IX, the Debtor's current and former officers' and directors' rights to indemnification (other than any Paz Party or Northwind Party) are preserved to the extent set forth herein.

F.    *The Asset Sale Wind-Down*

***If determined by the Debtor, in its sole discretion, to proceed with the Asset Sale Wind-Down as set forth in the Asset Sale Notice, the Debtor shall implement the Asset Sale Wind-Down as follows:***

1.    Asset Sale.

On the Effective Date, the Debtor shall consummate the Asset Sale, and, among other things, the acquired assets, as set forth in the Asset Purchase Agreement and Asset Sale Notice, shall be transferred to and vest in the Purchaser or Secured Lender, as the case may be, free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the terms of the Asset Purchase Agreement, Plan, and Confirmation Order, *provided*, *however*, that the Debtor shall issue

the Subordinated Note and shall assign the Subordinated Note to the Purchaser or the Secured Lender, as the case may be.  Neither the Purchaser nor the Secured Lender, as the case may be, shall be deemed to be a successor of the Debtor (except as the assignee of the Subordinated Note). On the Effective Date, the Purchaser or Secured Lender, as applicable, shall pay to the Debtor the Asset Sale Proceeds from the Asset Sale.  The Confirmation Order shall: (i) approve the Asset Purchase Agreement and Asset Sale as contemplated hereby; and (ii) authorize the Debtor to undertake the transactions contemplated thereby and in connection with such Asset Sale, including pursuant to sections 363, 365, 1123 and 1141 of the Bankruptcy Code.

2.     <u>Operation and Funding of Debtor, and Retained Causes of Action.</u>

If the Debtor consummates the Asset Sale Wind-Down, and in accordance with the Amended Debtor Organizational Documents, then on or before the Effective Date, the Debtor shall (a) wind down the Debtor's business and affairs as expeditiously as possible, (b) resolve Disputed Claims, (c) make distributions on account of Allowed Claims as provided hereunder, (d) enforce and prosecute claims, interests, rights, privileges and the Retained Causes of Action in an efficient manner, (e) file appropriate tax returns, (f) comply with the Debtor's continuing obligations under the Asset Purchase Agreement, if any, (g) liquidate the Wind-Down Assets and distribute the proceeds thereof as set forth herein, (h) administer the Plan in an efficient manner; and (i) carry out any and all other purposes as set forth in the Amended Debtor Organizational Documents.

On the Effective Date, the Wind-Down Budget will be transferred to the Debtor, and the Wind-Down Assets shall vest in Debtor.  The Plan Administrator shall distribute the proceeds of the Wind-Down Assets in the manner set forth in the Plan and the Amended Debtor Organizational Documents.

3.     <u>Vesting of Assets</u>

Except as otherwise provided in the Plan, the Confirmation Order, the Asset Purchase Agreement, or any, agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the assets of the Debtor that are not transferred to the Purchaser or Secured Lender, as the case may be, pursuant to the Asset Purchase Agreement, if any, shall vest in the Debtor free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan or the Asset Purchase Agreement, the Plan Administrator may operate the Debtor and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

4.     <u>Sources of Consideration for Plan Distributions</u>

Distributions under the Plan will be funded with (i) Cash on hand on the Effective Date, (ii) the Asset Sale Proceeds (if any), and (iii) the revenues and proceeds of all assets of the Debtor after the Effective Date and consummation of the Asset Sale, including proceeds from all Wind-Down Assets, as set forth in the Plan.

5.    <u>Corporate Existence, Plan Administrator and Post-Effective Date Debtor</u>

Except as otherwise provided in the Plan, the Debtor shall continue to exist after the Effective Date, subject to the Amended Debtor Organizational Documents.

The Plan Administrator shall act for the post-Effective Date Debtor in the same fiduciary capacity as applicable to a board of managers, directors, members and officers, subject to the provisions hereof and the Amended Debtor Organizational Documents.  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, members and officers of the Debtor shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole manager and sole officer for the post-Effective Date Debtor and shall succeed to the powers of the post-Effective date Debtor's managers and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of and shall act for the post-Effective Date Debtor. For the avoidance of doubt, the foregoing shall not limit the authority of the Plan Administrator to continue the employment of any former manager, director, or officer. Among other things, the Plan Administrator shall be responsible for all actions set forth, and contemplated, herein, including Article VII. Without limiting the foregoing, the Plan Administrator shall be deemed to be substituted as the party-in-lieu of the Debtor in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

6.    <u>Corporate Action</u>

Upon the Effective Date, all actions contemplated by the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtor, the Plan Administrator, or any other Entity, including: (a) implementation of the Asset Sale Wind-Down; (b) consummation of the Asset Sale; and (c) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by, the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor, in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtor.

Before the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor, and on or after the Effective Date, the Plan Administrator, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan.  The authorizations and approvals contemplated by this Article IV.F.6 shall be effective notwithstanding any requirements under non-bankruptcy law.

7.      Effectuating Documents; Further Transactions

On and after the Effective Date, the Debtor and/or the Plan Administrator, as applicable, and the officers and members thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, in each case, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123, section 1141, and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

8.      Cancellation of Agreements and Interests

On the Effective Date, except to the extent otherwise specifically provided for in the Plan: (1) the Interests in the Debtor, and all notes, bonds, agreements, instruments, certificates, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, indentures, and any other instruments or documents directly or indirectly evidencing, creating, or, relating to any indebtedness or obligations of, or ownership interest, equity, or portfolio interest in, the Debtor, or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity ownership, or profits interests in the Debtor giving rise to any Claims or Interests shall be canceled, discharged, surrendered, and of no force or effect and deemed surrendered to the Debtor and the Debtor shall not have any continuing obligations thereunder; and (2) the Interests in the Debtor in the foregoing (1) shall be fully released, settled, compromised, and discharged.  The Holders of, or parties to, such agreements and interests in the foregoing (1) and (2) will have no rights arising from or related to such agreements and interests; *provided*, that, notwithstanding Confirmation or the occurrence of the Effective Date, (i) any such canceled agreements or interests that govern the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of enabling Holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein, and (ii) the Amended Debtor Organizational Documents should continue in full force and effect so that the Plan Administrator may administer the Plan in accordance with the terms hereof.

G.      *Closing the Chapter 11 Case*

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## Article V.

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

In either a Reorganization or an Asset Sale Wind-Down, on the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) is subject to a pending motion to assume such Executory Contract or Unexpired Lease as of the Effective Date; (3) is to be assumed by the Debtor or assumed by the Debtor and assigned to another third party, as applicable, in connection with any Asset Sale; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Schedule of Assumed Executory Contracts and Unexpired Leases, or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order.  Unless otherwise indicated or agreed by the Debtor and the applicable contract counterparties, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date; *provided*, *however*, if, as a result of the filing of Supplemental Cure Notice, the time to object, or the resolution of a timely-filed objection, has not occurred by the Effective Date, than the assumption, assumption and assignment, or rejection of the subject Executory Contract or Unexpired Lease shall occur upon the earlier of (x) the expiration of the objection period without an objection being timely interposed and (y) resolution of a timely objection by agreement or entry of the Final Order, subject to the re-designation rights set forth in this Article V.  Subject to section 365(c) of the Bankruptcy Code, each Executory Contract and Unexpired Lease assumed pursuant to the Plan or a Bankruptcy Court order and not assigned to a third party on or prior to the Effective Date, shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been validly modified by order of the Bankruptcy Court and notwithstanding any provision in any such assumed Executory Contract or Unexpired Lease that restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), and, therefore, consummation of the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in the Plan, the Debtor reserves the right to alter, amend, modify, or supplement the listing of Executory Contracts and Unexpired Leases identified on the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable, at any time prior to the Effective Date.  Parties that may object to either the assumption, assumption and assignment or rejection of their Executory Contract or Unexpired Lease must timely raise such objections regardless of whether the Debtor has indicated an intent to assume and not reject or reject and not assume such Executory Contract or Unexpired Lease.

For avoidance of doubt and to the extent such agreements have not previously been terminated, the Management Agreement and SNDA will be rejected and terminated on the Effective Date, *provided*, *however*, that Ace shall not be entitled to any Claims, including any rejection damages, beyond the treatment of the Ace Secured Claim provided in Article III.

B.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claims, in Cash on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

***Unless a different amount is (i) set forth in the October Cure Notice or a Supplemental Cure Notice, or (ii) set by a Final Order of the Court following a timely-filed objection from a counterparty as specified in the paragraph immediately below, all Cure Claims shall be set at $0.00.***  In the event of a dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtor, the Purchaser or Secured Lender, as the case may be, or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; and/or (3) any other matter pertaining to assumption or the assumption and assignment, the underlying Executory Contract or Unexpired Lease shall not be assumed and payment of the Cure Claims shall not occur until after the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment or as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and the counterparty to such Executory Contract or Unexpired Lease; provided that, if a Final Order adjudicates a Cure Claim in an amount higher than the Debtor proposed, the Debtor, Reorganized Debtor or Purchaser (as applicable) shall have seven (7) days from the date such order becomes a Final Order to designate the underlying Executory Contract or Unexpired Lease for rejection.  Notwithstanding the foregoing, nothing herein shall prevent the Debtor or the Reorganized Debtor, as applicable from settling any Cure Claim without further notice to or action, order, or approval of the Bankruptcy Court.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a Cure Claim must be Filed, served, and actually received by the Debtor fourteen (14) calendar days after the date on which the applicable Supplemental Cure Notice is filed and served, ***provided*, *however*, that notwithstanding anything herein to the contrary, but solely in the context of an Asset Sale Wind-Down, if the amount of a Cure Claim for an Executory Contract or Unexpired Lease was included in the October Cure Notice and the counterparty thereto failed to assert**

**a timely objection to the October Cure Notice, then the Cure Claim for such counterparty shall be the amount specified in the October Cure Notice.** Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption or assumption and assignment, must be Filed, served, and actually received by the Debtor before the later of (i) the Confirmation Objection Deadline or (ii) fourteen (14) calendar days after the date on which on which the Debtor adds such Executory Contract and Unexpired Lease to the Schedule of Assumed Executory Contracts and Unexpired Leases. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure Claim. To the extent that the Debtor seek to assume and assign an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtor will identify the assignee in the Plan Supplement and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned at or prior to the Confirmation Hearing.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Claim, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date that the Debtor assume or assume and assign such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, and the Cure Claim paid, shall be deemed Disallowed and expunged, without further notice to, or action, order, or approval of, the Bankruptcy Court.

C.    *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) the Claims Bar Date; (2) thirty (30) days after the date of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving such rejection; and (3) thirty (30) days after the date an Executory Contract or Unexpired Lease is added to the Schedule of Rejected Executory Contracts or Unexpired Leases. **Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Case on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Debtor's Estate, the Reorganized Debtor, the Plan Administrator, or the property for any of the foregoing without the need for any objection by the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**

Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.C.8 of the Plan.

Counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be served with a notice of rejection of Executory Contracts and Unexpired Leases substantially in the form approved by the Bankruptcy Court, pursuant to the Bankruptcy Court order approving the Disclosure Statement, on or prior to the Election Notice Deadline.

D.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or Reorganized Debtor has any liability thereunder.

## Article VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

In the Asset Sale Wind-Down, payment from the GUC Wind-Down Pool shall be made on the date or dates determined by the Plan Administrator, after giving due consideration to the amount of claims entitled to distribution that remain Disputed and the relative costs and expenses of making serial distributions from the GUC Wind-Down Pool, provided that the first distribution from the GUC Wind-Down Pool shall be made no later than 180 days after the Effective Date. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.    If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests (which will only be made if and when they become Allowed Claims or Allowed Interests) shall be made pursuant to

the provisions set forth in Article VIII. Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Debtor shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

B.    *Disbursing Agent*

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent as set forth in the Plan. At the option of the Disbursing Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the applicable Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable, actual, and documented attorney and/or other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Debtor or Reorganized Debtor, as applicable.

D.    *Delivery of Distributions*

1.    Delivery of Distributions in General

Except as otherwise provided in the Plan, as applicable, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent, as appropriate: (a) to the signatory set forth on any Proof of Claim filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is filed or if the Debtor has not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Debtor, the Reorganized Debtor, the Plan Administrator, or the applicable Disbursing Agent, as appropriate, after the date of any related Proof of Claim; or (c) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf. Subject to this Article VI, distributions under the Plan on account

47

of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan, and the Plan Administrator shall have no liability for making the distributions without regard to any asserted levy, garnishment, attachment, or like legal process. The Debtor, the Reorganized Debtor, the Plan Administrator, and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

2.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180-calendar days from the date of the distribution.  After such date, all unclaimed property or interests in property shall revert to the Debtor or Reorganized Debtor, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

Checks issued on Account of Allowed Claims shall be null and void if not negotiated within 180 calendar days from and after the date of issuance thereof.  Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the Holder of the relevant Allowed Claim within the 180-calendar day period.  After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and such funds shall revert to the Debtor or Reorganized Debtor, as applicable (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary).

3.    Minimum Distributions

Holders of Allowed Claims entitled to distributions of $50 or less shall not receive distributions, and each Claim to which this limitation applies shall be discharged pursuant to Article IX of the Plan (as applicable) and its Holder shall be forever barred pursuant to Article IX of the Plan from asserting such Claim against the Reorganized Debtor or the Plan Administrator, as applicable, or their property.

E.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Debtor, the Reorganized Debtor, the Disbursing Agent (if other than the Reorganized Debtor), and the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, Debtor, the Reorganized Debtor, the Disbursing Agent, and the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements,

including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

F.      *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan (including application of the Postpetition Interest Rate to determine the amount of the Secured Lender's Claim), the Cash Collateral Order, the Confirmation Order, or other order of the Bankruptcy Court, and notwithstanding any documents that govern the Debtor's prepetition indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims, and (2) no Holder of a Claim shall be entitled to: (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

G.      *Allocation Between Principal and Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

H.      *Setoffs and Recoupment*

Other than as expressly set forth in the Plan or the Confirmation Order, the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, may, but shall not be required to, setoff against or recoup from any Allowed Claim or the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature whatsoever that the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, may have against the Holder of such Allowed Claim pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the Holder of such Claim, to the extent that such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (pursuant to the Plan or otherwise); *provided*, *however*, that the failure of the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, to do so shall not constitute a waiver, abandonment or release by the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, of any such Claim they may have against the Holder of such Claim.

I.      *Surrender of Canceled Instruments or Securities*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest (other than the Existing Equity Holder's Interest in the event of a Reorganization) shall be deemed to have surrendered such certificate or instrument to the Debtor or Reorganized Debtor, as applicable.  Such surrendered certificate or instrument shall be canceled solely with respect to the Debtor or Reorganized Debtor, as applicable, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect

to any indenture or agreement that govern the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights, and obligations which expressly survive the Effective Date.  Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired or Reinstated under the Plan.

*J.*      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor, the Reorganized Debtor, or the Plan Administrator.  To the extent that a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor, the Reorganized Debtor, or the Plan Administrator on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the applicable Reorganized Debtor or the Plan Administrator to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.      Applicability of Insurance Policies

The availability, if any, of insurance policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the insurance policies of the Debtor or the Reorganized Debtor, as applicable.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**Article VII.**

**THE PLAN ADMINISTRATOR**

*A.*      *The Plan Administrator*

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan, to administer and distribute any assets of the Debtor or Reorganized Debtor, as applicable, consistent with the Plan, to administer the Retained Causes of Action, and (if the Reorganization does not occur) wind-down the business and affairs of the Debtor, including (as, and if, applicable): (1) liquidating, selling, receiving, holding, investing, supervising, and protecting the assets of the Debtor; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (3) making distributions as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of Debtor; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan

to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of Debtor; (7) administering and paying taxes of the Debtor, including filing tax returns; (8) representing the interests of the Estate or Debtor, as applicable, before any taxing authority in all matters, including any action, suit, proceeding, or audit; (9) managing and carrying out the purpose of the Debtor; (10) closing the Asset Sale; (11) compromising or settling any Claims, Interests, or Retained Causes of Action remaining with Debtor after consummation of the Asset Sale without further approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules; and (12) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court, pursuant to the Plan, pursuant to the Amended Debtor Organizational Documents, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

In accordance with the Amended Debtor Organizational Documents, the Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court; *provided*, that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Debtor shall be terminated.

1.    Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan, and as otherwise provided in the Confirmation Order, the Plan Administrator Agreement and the Amended Debtor Organizational Documents. The Plan Administrator shall be the exclusive trustee of the Wind-Down Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.    Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid (i) by Debtor from the Wind-Down Assets pursuant to the Wind-Down Budget in an Asset Sale Wind-Down, or (ii) by the Reorganized Debtor in a Reorganization pursuant to the Operating Budget upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from such assets and shall not be subject to the approval of the Bankruptcy Court.

3.    Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Administrator Agreement and paid (i) by the Debtor from the Wind-Down Assets pursuant to the Wind-Down Budget in an Asset Sale Wind-Down, or (ii) by the Reorganized Debtor pursuant to the Operating Budget in a Reorganization. Except as otherwise ordered by the

Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes imposed on Debtor) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash (i) in an Asset Sale Wind-Down, from the Wind-Down Assets, or (ii) in a Reorganization, by the Reorganized Debtor.

4.   Plan Administrator Expenses

All reasonable costs, expenses, and obligations incurred by the Plan Administrator in administering the Plan, or in any manner connected, incidental, or related thereto, in effecting distributions thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid (i) from the Wind-Down Assets pursuant to the Wind-Down Budget in an Asset Sale Wind-Down, or (ii) by the Reorganized Debtor pursuant to the Operating Budget in a Reorganization.

The Debtor and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall, (i) in an Asset Sale Wind-Down, be paid for with Cash from the Wind-Down Assets and (ii), in a Reorganization, be paid by the Reorganized Debtor.

B.   *Asset Sale Wind-Down*

***The following shall apply only if the Debtor consummates an Asset Sale Wind-Down:***

On and after the Effective Date, the Plan Administrator will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and, if the Debtor consummates an Asset Sale Wind-Down, the Plan Administrator shall have the power and authority to take any action necessary to wind-down and dissolve the Debtor's Estate.

As soon as practicable after the Effective Date, the Plan Administrator shall: (1) cause the Debtor to comply with, and abide by, the terms of the Asset Purchase Agreement and any other documents contemplated thereby; and (2) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of the Debtor.  From and after the Effective Date, the Debtor (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtor was previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have canceled pursuant to the Plan all Interests, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  Notwithstanding the Debtor's dissolution, the Debtor shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

C.    *Exculpation, Indemnification, Insurance and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by Debtor and/or Reorganized Debtor, as applicable, to the maximum extent permissible by law. The Plan Administrator may obtain commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations. The Plan Administrator may rely upon written information previously generated by the Debtor.

Notwithstanding anything to the contrary contained herein, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtor.

D.    *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtor or Reorganized Debtor, as applicable, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtor, Reorganized Debtor or its Estate, as applicable, for any tax incurred during the administration of the Debtor's Chapter 11 Case as determined under applicable tax laws.

E.    *Dissolution of the Debtor*

If the Debtor consummates an Asset Sale Wind-Down, upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of completion of all its duties under the Plan and entry of a final decree closing the Chapter 11 Case, the Debtor shall be deemed to be dissolved without any further action by the Debtor, including the filing of any documents with the secretary of state for the state in which the Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Debtor in, and withdraw the Debtor from, the applicable state.

**Article VIII.**

**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT, AND UNLIQUIDATED CLAIMS AND INTERESTS**

A.    *Allowance of Claims and Interests*

After the Effective Date, the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses the Debtor had with respect to a Claim or Interest immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim against or Interest in the Debtor shall become an Allowed Claim

or an Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case Allowing such Claim or Interest.

## B.    Claims and Interests Administration Responsibilities

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, shall have the sole authority to: (1) File and prosecute objections to Claims and Interests; (2) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims or interests, regardless of whether such Claims or Interests are in a Class or otherwise; (3) settle, compromise, or resolve any Disputed Claim against or Disputed Interest in the Debtor without any further notice to or action, order, or approval by the Bankruptcy Court; and (4) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.   On and after the Effective Date, the Plan Administrator will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise.

## C.    Estimation of Claims

Before, on, or after the Effective Date, the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor, Reorganized Debtor, or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## D.    Adjustment to Claims and Interests Without Objection

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted on the Claims Register by the Reorganized Debtor or the Plan Administrator, as applicable, without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline, as such may be extended pursuant to the terms of the Plan.

F.      *Disallowance of Claims*

All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date solely to the extent such indemnification obligation owed the Holder of the Claim is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**Except as otherwise provided herein or as agreed to by the Reorganized Debtor or the Plan Administrator, as applicable, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of, the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

G.      *Amendments to Proofs of Claim*

On or after the Effective Date, a Proof of Claim or Proof of Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, and any such new or amended Proof of Claim or Proof of Interest filed shall be deemed Disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court, to the maximum extent provided by applicable law.

H.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or any portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

## Article IX.

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Discharge of Claims and Termination of Interests and Controversies.*

Solely in the context of a Reorganization, pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, including the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action (other than the Retained Causes of Action) against the Debtor of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Causes of Action accrued before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtor or its Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured (and no longer continuing) as of the Effective Date.  Unless expressly provided in the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.     *Release of Liens*

**Except as otherwise specifically provided in the Plan, the Confirmation Order, the Amended and Restated Loan Documents, the Asset Purchase Agreement, or in any contract, instrument, release, or other agreement or document created, assumed or preserved pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate (including the Ace Judgment Lien and any other liens held by Ace) shall be fully released, settled, discharged, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtor or the Reorganized Debtor, and their respective successors and assigns, as applicable, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtor or the Reorganized Debtor, as applicable.  If the Debtor consummates the Reorganization, then the Reorganized Debtor shall execute and deliver all documents to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests on such assets of the Debtor that are subject to the Reorganization and shall authorize the Reorganized Debtor to file UCC-3 termination statements (to the extent applicable) with respect thereto.  For the avoidance of doubt, any Liens asserted or held by Ace (including the Ace Judgment Lien) shall be fully released,**

settled and otherwise discharged against the Debtor and any of its property, the Prior Lender and any of its property and, to the extent applicable, the Secured Lender and any of its property, in all respects.

C.    *Releases by the Debtor*

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party shall hereby be expressly, unconditionally, irrevocably, generally, individually and collectively, released, acquitted, and discharged by the Debtor, the Reorganized Debtor, the Estate, and the Plan Administrator, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf the Debtor, that the Debtor, the Reorganized Debtor, the Estate, or the Plan Administrator would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Ace Secured Claim, Secured Lender Claim, Loan Documents, Arbitration Award, Ace Judgment Lien, Management Agreement, Ace Complaint, SNDA, SNDA Adversary Proceeding, SNDA Counterclaims, SNDA Crossclaims, the Ace Preference Adversary Proceeding, the Cash Collateral Order, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the Bidding Procedures Documents, the Disclosure Statement, the Plan, the Reorganized Debtor Governance Documents, the Amended Debtor Organizational Documents, the Amended and Restated Loan Documents, the Asset Purchase Agreement, Ace Settlement, Subordinated Note, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Reorganized Debtor Governance Documents, Amended Debtor Organizational Documents, the Amended and Restated Loan Documents, the Asset Purchase Agreement, Ace Settlement, Subordinated Note, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any Person or Entity under the Plan or any document, instrument, or agreement (including the Amended and Restated Loan Documents and any other Plan Supplement document) executed to implement the Plan,

including the assumption of the Indemnification Provisions as set forth in the Plan, (2) any Retained Causes of Action, or (3) claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or, with respect to the Exculpated Parties, solely to the extent of the exculpation contained in Article VIII.E, gross negligence.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth above, which includes by reference to each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases set forth above are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the releases set forth above; (3) in the best interests of the Debtor and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after reasonable investigation by the Debtor and after notice and opportunity for hearing; and (6) a bar to the Debtor asserting any claim released by the releases set forth above against any of the Released Parties.

D.    *Releases by Holders of Claims and Interests*

Effective as of the Effective Date, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, is deemed to have released and discharged each Debtor, each Reorganized Debtor, their Estate, the Plan Administrator, and each Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership or operation thereof), the purchase, sale, or rescission of any security of the Debtor, the Reorganized Debtor, their Estate, or the Plan Administrator, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, Ace Secured Claim, Secured Lender Claim, Loan Documents, the Arbitration Award, Ace Judgment Lien, Management Agreement, Ace Complaint, SNDA, SNDA Adversary Proceeding, SNDA Counterclaims, SNDA Crossclaims, the Ace Preference Adversary Proceeding, the Cash Collateral Order, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the Bidding Procedures Documents, Disclosure Statement, the Plan, the Reorganized Debtor Governance Documents, the Amended Debtor Organizational Documents, the Amended and Restated Loan Documents, the Asset Purchase Agreement, Ace Settlement, Subordinated Note, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Reorganized Debtor Governance Documents, the Amended Debtor Organizational Documents, the Amended and Restated Loan Documents, the Asset Purchase Agreement, Ace Settlement , Subordinated Note, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of

Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any Person or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the assumption of the Indemnification Provisions as set forth in the Plan or (2) claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or, with respect to the Exculpated Parties, solely to the extent of the exculpation contained in Article VIII.E, gross negligence.

For the avoidance of doubt, nothing in this Plan shall be deemed to release, waive, discharge or limit in any manner any rights, claims or defenses (1) the Secured Lender may have against the Guarantors arising from or related to the Guarantees, or (2) the Guarantors may have against the Secured Lender arising from or relating to the Guarantees.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release set forth above, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the third-party release set forth above is: (1) consensual and in exchange for the good and valuable consideration provided hereunder and by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtor and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the third-party release set forth above against any of the Released Parties.

E.      *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Case, the Disclosure Statement, the Plan, Ace Secured Claim, Secured Lender Claim, Loan Documents, Arbitration Award, Ace Judgment Lien, Management Agreement, Ace Complaint, SNDA, SNDA Adversary Proceeding, SNDA Counterclaims, SNDA Crossclaims, Ace Preference Adversary Proceeding, Bidding Procedures Documents, the Asset Purchase Agreement, the Amended and Restated Loan Documents, Ace Settlement, Subordinated Note, Reorganized Debtor Governance Documents, the Amended Debtor Organizational Documents, or any contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Person or Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of

Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or any other act taken or omitted to be taken in connection or in contemplation with the restructuring of the Debtor or administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

F.    *Injunction*

Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Plan Administrator, Disbursing Agent, or the other Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim, Interest, Cause of Action, or liability or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their Related Parties shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions on account of, or Reinstatement of, such Claim or Interest, as applicable, hereunder shall be deemed to have consented to the injunction provisions set forth in this Article IX.F of the Plan.

G.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the supremacy clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the

Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case), or have not paid a debt that is dischargeable in the Chapter 11 Case.

H.    *Term of Injunctions of Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.    *Document Retention*

In the event of a Reorganization, on and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with its standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

## Article X.

## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article X.B hereof):

1.    ***if the Debtor consummates the Reorganization***, the Debtor and the Secured Lender shall have entered into the Amended and Restated Loan Documents;

2.    ***if the Debtor consummates an Asset Sale Wind-Down***, all conditions precedent to the effectiveness of the Asset Purchase Agreement shall have been satisfied or duly waived and the Asset Purchase Agreement shall have been executed, by (a) the Debtor and (b) the Secured Lender or Purchaser, as applicable, and remains in full force and effect;

3.    the Debtor shall have indefeasibly paid the Secured Lender Interest Payment to the Secured Lender;

4.    the Confirmation Order shall have been duly entered and shall be in full force and effect and shall not have been stayed, modified, or vacated on appeal;

5.    all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties

and, to the extent required, filed with the applicable Governmental Units in accordance with applicable law;

6.     all governmental and third-party approvals and consents, including Bankruptcy Court approval, that are necessary to implement the Plan Implementation Transactions shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

7.     the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Plan Implementation Transactions;

8.     all Professional Fee Claims authorized to be paid by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay all Professional Fee Claims that become payable or Allowed after the Effective Date shall have been placed in the Professional Fee Escrow Account, which shall have been established and funded; and

9.     the Debtor shall have implemented the Plan Implementation Transactions in a manner consistent in all material respects with the Plan.

*B.*     *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article X may be waived only by consent of the Debtor, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummates the Plan; *provided, however*, that in the event of a Reorganization, the waiver of the conditions precedent set forth in Article X.A.1. and Article X.A.3. hereof shall be subject to the consent of the Secured Lender, which consent shall not be unreasonably withheld; *provided further, however*, that in the event of an Asset Sale Wind-Down where the Secured Lender acquires the Debtor's Assets through a Credit Bid, waiver of the conditions precedent set forth in Article X shall be subject to the consent of the Secured Lender, which consent shall not be unreasonably withheld. The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of such rights, and each such right shall be deemed an ongoing right, which may be asserted at any time. Effect of Non-Occurrence of Conditions to the Effective Date

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtor, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders, or any other Entity in any respect.

*C.      Substantial Consummation*

"Substantial Consummation" of the Plan, as such term is defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## Article XI.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

*A.      Modification of Plan*

Subject to the limitations contained in the Plan, the Debtor reserves the right to modify the Plan, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.      Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date. If the Debtor revokes or withdraw the Plan, or if Confirmation and Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the Holders of Claims or Interests; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## Article XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over

the Chapter 11 Case and all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) whether any Executory Contract or Unexpired Lease has been assumed or rejected and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action and the Retained Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan and Plan Supplement;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in the Plan and Plan Supplement enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any other contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement; *provided*, that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order, in such manner as may be necessary to carry out the purposes and effects thereof;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated thereby, including disputes arising in connection with the implementation of the agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22.     hear and determine any disputes arising in connection with the interpretation, implementation, or enforcement of the Plan Implementation Transactions, whether they occur before, on, or after the Effective Date;

23.     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case with respect to any Person or Entity,

and resolve any cases, controversies, suits, or disputes that may arise in connection with any Person's or Entity's rights arising from or obligations incurred in connection with the Plan;

24.      hear any other matter not inconsistent with the Bankruptcy Code; and

25.      enter an order or final decree concluding or closing the Chapter 11 Case.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in this Article XII, the provisions of this Article XII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtor that arose prior to the Effective Date.

## Article XIII.

## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article XI.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order, shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, the Plan Administrator, any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. All Claims, Interests, and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim, Interest, or debt has voted on the Plan.

B.      *Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or Reorganized Debtor, as applicable, and all Holders of Allowed Claims or Allowed Interests receiving distributions pursuant to the

Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor or any other Entity with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to any Claims or Interests.

D.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

E.      *Service of Documents*

To be effective, all notices, requests, and demands to or upon the Debtor, the U.S. Trustee, Secured Lender, as applicable, must be in writing (with facsimile and email transmission being sufficient), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

**If to the Debtor:**

Lindenwood Associates, LLC
328 North Broadway, 2nd Floor
Upper Nyack, NY 10960
Attention:      Nat Wasserstein (nat@lindenwoodassociates.com)

*with copies to:*

67

Alston & Bird LLP
90 Park Avenue
New York, New York 10016
Attention:  Gerard S. Catalanello (Gerard.Catalanello@alston.com)
            James J. Vincequerra (James.Vincequerra@alston.com)
            Stephen Blank (Stephen.Blank@alston.com)
            Dylan S. Cassidy (Dylan.Cassidy@alston.com)
            Kimberly J. Schiffman (Kimberly.Schiffman@alston.com)

-and-

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Attention:  Michael R. Nestor (mnestor@ycst.com)
            Matthew B. Lunn (mlunn@ycst.com)
            Ryan M. Bartley (rbartley@ycst.com)
            Andrew A. Mark (amark@ycst.com)

**If to the U.S. Trustee**:

Office of the United States Trustee for the District of Delaware
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attention:  Joseph F. Cudia (joseph.cudia@usdoj.gov)

**If to the Secured Lender:**

McDermott Will & Emery LLP
1007 North Orange Street, 10th Floor
Wilmington, Delaware 19801
Attention:  Maris J. Kandestin (mkandestin@mwe.com)

-and-

McDermott Will & Emery LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Attention:  Marcus A. Helt (mhelt@mwe.com)

-and-

McDermott Will & Emery LLP
One Vanderbilt Avenue

New York, New York 10017
Attention:       Natalie Rowles (nrowles@mwe.com)

After the Effective Date, the Reorganized Debtor shall have authority to send a notice to parties in interest providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

*F.      Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

If the Effective Date does not occur, nothing herein shall be construed as a waiver by any party in interest of any or all of such party's rights, remedies, claims, and defenses, and such parties expressly reserve any and all of their respective rights, remedies, claims and, defenses. The Plan and the documents comprising the Plan Supplement, including any drafts thereof (and any discussions, correspondence, or negotiations regarding any of the foregoing) shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of any party in interest of any claim or fault or liability or damages whatsoever. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, all negotiations, discussions, agreements, settlements, and compromises reflected in or related to Plan and the documents comprising the Plan Supplement are part of a proposed settlement of matters that could otherwise be the subject of litigation among various parties in interest, and such negotiations, discussions, agreements, settlements, and compromises shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of the Plan and the documents comprising the Plan Supplement.

*G.      Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at www.deb.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control. The documents considered in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

*H.      Severability of Plan Provisions upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and

69

interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtor or the Reorganized Debtor, as applicable; and (iii) non-severable and mutually dependent.

I.      Closing of Chapter 11 Case

The Debtor or Reorganized Debtor, as applicable, shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

J.      Conflicts

To the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other document referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with the Confirmation Order, the Confirmation Order shall govern and control.

K.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Reorganized Debtor, or the Plan Administrator, as applicable, will have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

L.      Waiver or Estoppel

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

*M.*    *Further Assurances*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor, the Reorganized Debtor, the Plan Administrator, all Holders of Allowed Claims or Allowed Interests receiving distributions pursuant to the Plan, and all other parties in interest may and shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

\*         \*         \*         \*         \*

Respectfully submitted, as of the date first set forth above,

**225 Bowery LLC**

By: *_/s/ Nat Wasserstein_*
Nat Wasserstein
Chief Restructuring Officer